VANDERVELDE, and another, Plaintiffs-Respondents, and others, Intervening Plaintiffs-Respondents, v. CITY OF GREEN LAKE, Defendant-Appellant.

*No. 739 (1974).  Argued March 3, 1976.—Decided April 7, 1976.*
(Also reported in 240 N. W. 2d 399.)

For the appellant there were briefs and oral argument by *Arthur M. Wiesender* of Berlin.

For the respondents there was a brief by *John Scripp* and *Whyte & Hirschboeck, S. C.* of Milwaukee, and oral argument by *Mr. Scripp.*

CONNOR T. HANSEN, J. The litigation arises out of the procedure invoked by the city of Green Lake to condemn certain portions of land owned by the plaintiffs-respondents and the intervening plaintiffs-respondents (hereinafter plaintiffs). The condemnation is for the purpose of extending the sanitary sewer and water mains of the city to four property owners who presently have private sewer and water systems. The plaintiffs also dispute the validity of three city ordinances, identified as ordinance numbers 56, 74 and 75, which would require them to use the city service, subject to penalty for refusal, once construction is completed.

The four property owners involved in the condemnation proceeding own property located in the Strauss plat of Oakwood, which is in an area referred to as Oakwood Point. Oakwood Point is a peninsula extending into Green Lake and Dartford Bay. Three of the property owners are parties to this action, Lawrence M. Vandervelde and Nancy Vandervelde, plaintiffs-respondents,

Cuthbert K. Vandervelde and Evelyn Vandervelde, and James H. Barbour, intervening plaintiffs-respondents. The fourth property owner, Robert Rodgers, is not a party to the instant litigation. Two of the property owners, the plaintiffs-respondents, and Rodgers occupy their premises permanently. The intervening plaintiffs-respondents occupy their premises on a seasonal or occasional basis.

The common council of the city began planning for the extension of its sewer and water systems to the four property owners in September 1973, when it directed the city engineer to commence preliminary work on the projects. At its October meeting, the council agreed upon one of three plans submitted by the city engineer and adopted a preliminary resolution (Resolution No. 119) declaring its intent to levy assessments against the four property owners to be affected by the extension of the sewer and water mains. Significantly, the plan agreed upon did not provide for sewer and water mains adjacent to the property owned by the Cuthbert K. Vanderveldes.

The plans for the project contemplated that easements would be necessary on the property of three of the four affected property owners. Negotiations were undertaken by the city with the property owners for the purpose of acquiring the necessary easements. The property owners were also notified of a public hearing relating to the special assessment, to be held on November 12, 1973. The plaintiffs refused to grant the easements. They also objected to the project at the November 12th hearing. The fourth property owner, Rodgers, was in favor of the project. Following the public hearing, a regular meeting of the council was convened. At this meeting the council adopted Resolution No. 120 which authorized the construction of systems and levied special assessments against the four property owners. The same resolution also purported to be the relocation order required by sec. 32.05 (1), Stats., for condemnation proceedings.

Condemnation proceedings were then commenced against the three property owners from whom it would be necessary to acquire easements. The Lawrence M. Vanderveldes, resident property owners, initiated the instant proceedings in the circuit court on December 14, 1973. They requested temporary and permanent injunctions restraining the city from further activity with respect to the project. A temporary restraining order was entered the same day. The Cuthbert K. Vanderveldes and Barbour, the intermittent resident property owners, were allowed to intervene without objection.

Hearing on the issue of permanent injunction was held on January 24, 1974. Judgment was thereafter entered granting a permanent injunction restraining the city from further proceeding under Resolution No. 120 and from proceeding to enforce ordinance numbers 56, 74 and 75 against the plaintiffs. The trial court granted the permanent injunctions based upon conclusion that the city had grossly abused its discretion in determining that necessity existed for the extension of the city sanitary sewer.

We first direct our attention to city ordinance numbers 56, 74 and 75. These ordinances were enacted by the city pursuant to sec. 144.06, Stats., which provides:

". . . To assure preservation of public health, comfort and safety, any city or village or any town having a population of more than 7,500 having a system of waterworks or sewerage, or both, may by ordinance require buildings used for human habitation and located adjacent to a sewer or water main, or in a block through which one or both of such systems extend, to be connected with either or both in the manner prescribed. If any person fails to comply for more than 10 days after notice in writing the municipality may impose a penalty or may cause connection to be made, and the expense thereof shall be assessed as a special tax against the property. . . ."

Ordinance number 56, as amended by ordinance number 75, requires adjacent property owners to connect with sewer mains as therein provided and establishes a penalty for failure to do so. Ordinance number 74 is similar to the other two ordinances except that it relates to water mains.

The plaintiffs challenged the validity of these ordinances in the trial court. Their challenge was based upon their interpretation of sec. 144.06, Stats. The trial court did not pass upon this issue because of its favorable determination to the plaintiffs on the condemnation issue. On appeal, the city raises the issue for resolution to forestall further appeal and in anticipation of the exercise of the authority granted in sec. 144.06. Based upon the precedent of *Klump v. Cybulski* (1957), 274 Wis. 604, 611, 81 N. W. 2d 42, we deem it appropriate to do so.

The pertinent phrase in sec. 144.06, Stats., is ". . . any city or village or any town having a population of more than 7,500 having a system. . . ." In the trial court, the plaintiffs contended the ordinances were invalid because the city did not have a population of more than 7,500. The city argues the population requirement applies only to towns. Since two constructions of the phrase are reasonable, it is proper to examine the legislative history for possible information as to the legislative intent. *Madison Metropolitan Sewerage Dist. v. DNR* (1974), 63 Wis. 2d 175, 180, 216 N. W. 2d 533.

Prior to 1965, sec. 144.06, Stats., did not apply to towns at all, but only to cities and villages. Furthermore, there was no population limitation imposed to restrict cities and villages that could exercise authority under the terms of the provision, sec. 144.06, Stats. 1963. Ch. 58, Laws of 1965, amended the provision to include the phrase "or any town having a population of more than 7,500." A review of the drafting history of this addition to the statutory language reflects that the following re-

quest resulted in the final form: "Amend 144.06 to apply also to towns having a population of more than 7,500," Drafting File, ch. 58, Laws of 1965. This in no way indicates an intent to establish a population limitation on cities and villages previously covered by the terms of the statute. On the contrary, it manifests a clear intent to broaden the statute's coverage to include towns with a population in excess of 7,500. Thus, the population limitation is applicable only to towns. This construction is supported by the rule that qualifying or limiting clauses in a statute are to be referred to the next preceding antecedent, unless the context or plain meaning dictates otherwise, *Fuller v. Spieker* (1954), 265 Wis. 601, 605, 62 N. W. 2d 713.

Our conclusion is that the city, though having a population of less than 7,500, does have authority to require use of city sewer and water mains by ordinance adopted in accordance with the provisions of sec. 144.06, Stats.

Several issues relating to the merits are raised on this appeal. Our disposition of the case does not require consideration of them in detail. Our examination of the record reflects substantial irregularities in the city council proceedings and a minimum, if not a complete absence of attention to the question of necessity as to the extension of the water main. We find these irregularities and insufficiencies to be of such dimension to require a reversal, not on the merits, but rather in the interests of justice pursuant to sec. 251.09, Stats.

We find no indication in the record that the city ever made an investigation as to the necessity for the extension of city water service, nor is there any testimony in the record reflecting necessity for the service. While protection of the public health through provision of adequate water and sewage service is a commendable objective, this does not obviate the requirement that necessity must be shown for exercise of the condemnation

power in connection with plans to provide such service, art. XI, sec. 2, Wisconsin Constitution; sec. 32.07, Stats.

Also, sec. 32.05 (1), Stats., requires that a relocation order be made in connection with proposed condemnation plans. Resolution No. 120, adopted by the city, approved the proposed plan of constuction and provided for assessments against the benefited property owners pursuant to sec. 66.60. However, the city improvidently denominated this resolution as also the relocation order required by sec. 32.05 (1), thus leaving it open to attack as invalid on the grounds of procedural irregularities relating to sec. 66.60.

The city acknowledges that it intends to require use of the service upon completion of construction in accordance with sec. 144.06, Stats., *supra,* and city ordinance numbers 56, 74 and 75 enacted pursuant thereto. That statute, and the ordinances, direct that the authority be exercised only if the building to be connected is located adjacent to a sewer or water main, or in a block through which one or both of such systems extend. The geography of the property in question prevents its designation as a "block" as the term is normally used. Therefore, a proposed plan of construction must meet the requirement of adjacency. The record reflects that the plan approved by Resolution No. 120 does not meet this test as to the property of Cuthbert K. and Evelyn Vandervelde.

The conclusion reached herein does not purport to bear on the issue of whether a reasonable necessity exists for the extension of city water and sewage service to the plaintiffs. Indeed, there is testimony which could be construed as establishing grounds for the necessity of sewage lines. However, it is fundamental that statutory provisions relating to condemnation and assessment must receive strict compliance, *Herro v. Natural Resources Board* (1971), 53 Wis. 2d 157, 171, 192 N. W. 2d 104; *Green Tree Estates, Inc. v. Furstenberg* (1963), 21

Wis. 2d 193, 197, 124 N. W. 2d 90. In view of the irregularities and omissions which have accompanied this condemnation action from its inception, the decision of the trial court, which was made on the merits, must be reversed, and the entire condemnation proceeding invalidated in the interests of justice.

*By the Court.*—Order and judgment reversed.