DAVID T. PROSSER, J.
¶ 1. This is a review of an unpublished decision of the court of appeals affirm *450 ing a circuit court order denying a grandmother's motion for visitation rights.[1]
¶ 2. The case requires us to interpret Wis. Stat. § 767.43(1) (2013-14),[2] which allows certain categories of individuals to petition for the right to visit children —usually following the dissolution of a marriage. Under the statute, a "grandparent, greatgrandparent, stepparent or person who has maintained a relationship similar to a parent-child relationship with the child" may file a motion for visitation rights. We must determine whether the "parent-child relationship" requirement applies only to the "person" category listed in the statute, or whether it applies to a "grandparent, greatgrandparent, [and] stepparent" as well.
¶ 3. The case arose after Carol Meister filed a motion for the right to visit her four grandchildren in the wake of her son Jay Meister's divorce from Nancy Meister.[3] A family court commissioner for the Jefferson County Circuit Court initially granted the motion, but the circuit court denied the motion on de novo review. Reading Wis. Stat. § 767.43(1) as requiring every petitioner under this subsection to demonstrate a parent-child relationship with the child, the circuit court concluded that Carol's supportive relationship with the children did not elevate her to a parent-like role in their lives.
¶ 4. The Meister children appealed, and the court of appeals affirmed, citing its decision in Rogers v. Rogers, 2007 WI App 50, 300 Wis. 2d 532, 731 *451 N.W.2d 347, as controlling. In Rogers, the court of appeals stated that grandparents filing a motion under Wis. Stat. § 767.43(1) must prove "a parent-like relationship" with the child in order to secure visitation rights. Rogers, 300 Wis. 2d 532, ¶ 11.
¶ 5. Before this court, the Meister children argue that the court of appeals misinterpreted Wis. Stat. § 767.43(1) in Rogers. They assert that the phrase "who has maintained a relationship similar to a parent-child relationship with the child" applies only to a person other than a grandparent, greatgrandpar-ent, or stepparent filing a motion for visitation under the subsection. Nancy counters that reading the subsection to allow courts to grant visitation rights to grandparents, greatgrandparents, and stepparents based solely on a best interest of the child determination would intrude on parents' fundamental due process rights to direct the care, custody, and control of their children.
¶ 6. We conclude that Wis. Stat. § 767.43(1) does not require a grandparent, greatgrandparent, or stepparent who files a motion for visitation rights under this subsection to prove that he or she "has maintained a relationship similar to a parent-child relationship with the child." Rather, the parent-child relationship element applies only to a "person" seeking visitation rights who is not a grandparent, greatgrandparent, or stepparent. Additionally, we conclude that the legislature's decision to allow courts to grant visitation rights to grandparents, greatgrandparents, and stepparents when visitation is in the best interest of the child does not unconstitutionally infringe on parents' constitutional rights because any best interest determination must give special weight to a fit parent's decisions *452 regarding the child's best interest. Consequently, the decision of the court of appeals is reversed.
I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY
¶ 7. Nancy and Jay Meister married in February 2002. They were divorced in Jefferson County Circuit Court in February 2013. Nancy and Jay are parents of four minor children: S.A.M., A.L.M., O.M.M., and J.E.M.
¶ 8. By the terms of their divorce judgment and incorporated marital settlement agreement, Nancy and Jay agreed to joint legal custody of their children. Nancy received impasse-breaking authority and primary physical placement, while Jay received regular weekday and weekend placement. In addition to the weekly plan, Nancy and Jay agreed to an extensive placement schedule for holidays, special occasions, and vacations. The agreement included an approximately equal division of major holidays between Nancy and Jay each year; Nancy and Jay switch between various holidays in even and odd years. The plan also guaranteed a week of exclusive time with the children for each parent during the summer.
¶ 9. In July 2013 the children's paternal grandmother, Carol Meister, filed a motion asking that the court establish visitation rights for her under Wis. Stat. § 767.43(1) on the basis of her grandparent relationship with the children. Her motion indicated that she decided to file the petition in response to changes Nancy had made to Carol's informal visitation with them.[4] Carol sought six visits per year, the right *453 to arrange visits with Jay and Nancy using an online family scheduling portal, and the right to regular phone calls with the children.
¶ 10. After holding a hearing on the motion, a family court commissioner[5] issued an order in November 2013 granting Carol's motion for visitation. The commissioner read Wis. Stat. § 767.43(1) as "requir-ting] that the grandparent have a relationship similar to a parent-child relationship" in order to secure visitation rights. However, the commissioner found that a relationship similar to a parent-child relationship existed between Carol and her grandchildren, and he granted Carol one week of placement at her home in Ohio each summer, four three-day placements in Wisconsin throughout the year, and access to the online portal to arrange her visits with Nancy and Jay.[6]
¶ 11. Pursuant to Wis. Stat. § 767.17, Nancy requested that the circuit court review the commissioner's order. On review, the circuit court[7] conducted a hearing to expand the record regarding Carol's rela *454 tionship with her grandchildren. Carol traveled from Ohio to Wisconsin to testify at the hearing. Appearing without an attorney, she engaged in an extended conversation with the circuit court regarding her relationship with the children.
¶ 12. Over the course of her testimony, Carol described the supportive role she played in her grandchildren's lives. She began by explaining how, drawing on her own experience as a teacher, she tutored them in various subjects during a vacation to Florida in 2012 and during the children's spring break in 2013. As she continued, she mentioned that she frequently purchased food and clothing for them when they visited her in Ohio and when she visited them in Wisconsin. She emphasized that, even when she was physically distant from the children, she played an important consultative role for them and for their father, helping the children with homework by phone and providing Jay with general parenting advice. The children called her "frequently, almost daily sometimes," when staying with their father.
¶ 13. Given that Carol appeared pro se and that the children's guardian ad litem — who supported the commissioner's order — was unable to attend the hearing, the circuit court helped to guide Carol's testimony by asking multiple questions about whether Carol had ever lived with the children. The questions focused on determining whether Carol's was the type of case in which "the parents [had] . . . relinquish [ed] their parental duties to the grandparent for some prolonged period of time and . . . the grandparent then [was] acting as the parent." After hearing Carol's testimony, the circuit court expressed concern about taking the "extraordinary step" of concluding that a parent-child relationship sufficient for visitation existed where a *455 grandmother had such a "staggered" relationship with the grandchildren. But, reluctant to reverse the commissioner without hearing from an attorney advocating in favor of Carol's visitation motion, the circuit court decided to schedule a second hearing so that the children's guardian ad litem could attend.
¶ 14. At the second hearing in January 2014, the guardian ad litem argued that, although Carol may not be a primary parent, she nevertheless had a relationship with the children similar to that of a parent who lived out of state. Arguing that" [t]he statute does not require [Carol] to elevate to the status of primary parent," the guardian ad litem observed that "if Mr. Meister relocated to the State of Ohio and had that same relationship that his mother [had] . . . with the children, he's still a parent."
¶ 15. After taking the matter under consideration, the circuit court issued a May 2014 order denying Carol's motion. An accompanying memorandum decision explained that the court concluded that Carol was "ineligible for an award of grandparent visitation" because she "did not have a relationship similar to a parent-child relationship" with her grandchildren.
¶ 16. The children, by their guardian ad litem, appealed the circuit court's denial of their grandmother's motion.[8] Before the court of appeals, the children *456 argued that "the circuit court applied the wrong legal standard when it required that the grandmother, in order to be eligible to receive visitation rights, show that she had a relationship similar to a parent-child relationship with them." S.A.M. v. Meister, No. 2014AP1283, unpublished slip op., ¶ 12 (Wis. Ct. App. Feb. 5, 2015).
¶ 17. Relying on its previous interpretation of Wis. Stat. § 767.43(1) in Rogers v. Rogers, 2007 WI App 50, 300 Wis. 2d 532, 731 N.W.2d 347, the court of appeals disagreed with the children. Meister, unpublished slip op., ¶ 15. In Rogers, the court of appeals stated that Wis. Stat. § 767.245 (now § 767.43(1)[9]) requires, among other things, that "grandparents must have a parent-like relationship with the child" in order to qualify for visitation rights. Rogers, 300 Wis. 2d 532, ¶ 11. The court of appeals in the present case treated that language from Rogers as "a clear declaration that any person seeking visitation rights under Wis. Stat. § 767.43(1) must first show that he or she has a relationship similar to a parent-child relationship in order to establish that he or she is eligible to receive visitation rights." Meister, unpublished slip op., ¶ 15 (emphasis added). "[B]ound by that declaration" from Rogers, id. (citing Cook v. Cook, 208 Wis. 2d 166, 190, 560 N.W.2d 246 (1997)), the court of appeals affirmed the circuit court's conclusion that Carol had *457 not demonstrated that she maintained a relationship with the children similar to a parent-child relationship, id., ¶¶ 21-22.
¶ 18. The court of appeals issued its decision on February 5, 2015. Shortly afterward, on February 25, 2015, Carol passed away.[10] The children filed a petition for review on March 2, 2015, which we granted on June 12, 2015.
*458 II. STANDARD OF REVIEW
¶ 19. This case requires us to interpret Wisconsin's grandparent visitation statute. "The interpretation and application of a statute are questions of law that we review independently, 'but benefiting from the analyses of the court of appeals and the circuit court.' " Richards v. Badger Mut. Ins. Co., 2008 WI 52, ¶ 14, 309 Wis. 2d 541, 749 N.W.2d 581 (quoting Marder v. Bd. of Regents of the Univ. of Wis. Sys., 2005 WI 159, ¶ 19, 286 Wis. 2d 252, 706 N.W.2d 110).
III. DISCUSSION
A. Interpreting Wis. Stat. § 767.43(1)
¶ 20. We begin our analysis by interpreting Wis. Stat. § 767.43(1). When interpreting statutes, this court consistently begins with the statutory language. State ex rel. Kalal v. Circuit Court for Dane Cty., 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110. "Statutory language is given its common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning." Id.
¶ 21. "Context is important to meaning. So, too, is the structure of the statute in which the operative language appears." Id., ¶ 46. Consequently, "statutory language is interpreted in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable *459 results." Id. "It is certainly not inconsistent with the plain-meaning rule to consider the intrinsic context in which statutory language is used; a plain-meaning interpretation cannot contravene a textually or contextually manifest statutory purpose." Id., ¶ 49. A review of the statutory history — meaning "previously enacted and repealed statutory provisions" — also can play a helpful role in the contextual analysis of a statute's language. Id., ¶ 52 n.9. Analysis of unambiguous statutory text does not require the court to resort to extrinsic sources of meaning such as legislative history, "although legislative history is sometimes consulted to confirm or verify a plain-meaning interpretation." Id., ¶ 51.
¶ 22. Applying this interpretive methodology, we conclude that the phrase "who has maintained a relationship similar to a parent-child relationship with the child" applies only to an otherwise undefined "person" who petitions for visitation rights under Wis. Stat. § 767.43(1), not to a grandparent, greatgrandparent, or stepparent. A grandparent, greatgrandparent, or stepparent need not prove a parent-child relationship to succeed on a petition for visitation. By this we mean that " maintain [ing] a relationship similar to a parent-child relationship with the child" is not the sine qua non of a visitation petition by a grandparent, great-grandparent, or stepparent under § 767.43(1). It is, however, the sine qua non for a petitioner who is not a grandparent, greatgrandparent, or stepparent under § 767.43(1).
¶ 23. We acknowledge that subsection (1) is not wholly unambiguous. In other words, reasonable people have read it in different ways. Nonetheless, we confidently reach the conclusion stated above after *460 reviewing the arguments pro and con, carefully examining the language of Wis. Stat. § 767.43(1), and then reviewing that language in context with surrounding language and with the statute's history. A brief review of the statute's legislative history confirms our interpretation.
¶ 24. In its current form, the relevant portion of Wis. Stat. § 767.43(1) reads as follows:
[U]pon petition by a grandparent, greatgrandparent, stepparent or person who has maintained a relationship similar to a parent-child relationship with the child, the court may grant reasonable visitation rights to that person if the parents have notice of the hearing and if the court determines that visitation is in the best interest of the child.[11]
¶ 25. The Meister children argue that the court of appeals incorrectly applied § 767.43(1) in Rogers, 300 Wis. 2d 532,. When discussing the grandparent visitation statute in Rogers, the court of appeals made the following declaration:
The grandparents correctly state that Wis. Stat. § 767.245 requires that three conditions must be satisfied before a circuit court may grant visitation: (1) the grandparents must have a parent-like relationship with the child, (2) the parents must have notice of the hearing, and (3) the court must determine that grandparent visitation is in the child's best interest.
*461 Rogers, 300 Wis. 2d 532, ¶ 11. The court did not support this statement with an exercise of formal statutory interpretation. It simply agreed with the grandparents in the case, whom the circuit court found to have had a parent-like relationship with the grandchildren.[12] Elsewhere in the opinion, the court of appeals cited Holtzman v. Knott, 193 Wis. 2d 649, 658, 533 N.W.2d 419 (1995), which used the same language in a visitation case that did not apply that statute.
¶ 26. Implicitly, under Rogers, any person— whether a grandparent, greatgrandparent, stepparent, or person having a different relationship with the child — must prove the existence of a parent-like relationship with the child in order to secure visitation rights under Wis. Stat. § 767.43(1). This would likely place an extremely heavy burden on grandparents who reside any significant distance from the children. It would disqualify grandparents who because of geography or other factors have been prevented from developing a close relationship.
¶ 27. According to the Meister children, the phrase "who has maintained a relationship similar to a parent-child relationship with the child" should apply only to a "person" other than a grandparent, great-grandparent, or stepparent seeking visitation rights under Wis. Stat. § 767.43(1). They argue in their principal brief that "what the statute seems to ask for *462 is that persons who are not grandparents or stepparents prove up a relationship similar to the one grandparents and stepparents already enjoy by virtue of their biological or legal connection to the child." To evaluate the Meister children's challenge to the Rogers court's language, we conduct an independent assessment of § 767.43(1).
¶ 28. The Meister children's focus on relationships has an intuitive appeal. Wisconsin Stat. § 767.43(1) applies to grandparents of a child of a married or formerly married couple. This means that these grandparents and greatgrandparents have a direct family tie to one of the parents of the child. A stepparent, under this subsection, is or was married to one of the parents of the child. On the other hand, the "person" category is undefined so that it is hard to anticipate the nature of the relationship that the "person" has to the child. The "person" could be a sister or brother, but it could also be an aunt or uncle, cousin, former foster parent, neighbor, or friend. Requiring proof of a significant supportive relationship from persons in this undefined category makes good policy sense. Requiring the same proof from a grandparent is unnatural, and it would clearly make a successful petition for visitation much more difficult for some grandparents than for others.
¶ 29. Our interpretation of the statutory language begins with an examination of its syntax. The Meister children urge us to apply the last-antecedent canon of statutory construction, under which " qualifying or limiting clauses in a statute are to be referred to the next preceding antecedent, unless the context or plain meaning dictates otherwise." Vandervelde v. City of Green Lake, 72 Wis. 2d 210, 215, 240 N.W.2d 399 *463 (1976) (concluding that a statute's minimum population requirement affected towns but not cities where statute applied to "any city or village or any town having a population of more than 7,500"); see also Antonin Scalia & Bryan A. Garner, Reading Law 144 (2012) ("Apronoun, relative pronoun, or demonstrative adjective generally refers to the nearest reasonable antecedent." (emphasis omitted)); 2A Norman J. Singer & Shambie Singer, Statutes and Statutory Construction § 47:33, at 494-97 (7th ed. 2014) ("Referential and qualifying words and phrases, where no contrary intention appears, refer solely to the last antecedent. The last antecedent is 'the last word, phrase, or clause that can be made an antecedent without impairing the meaning of the sentence.' " (footnote omitted)).[13]
*465 ¶ 30. Here, interpreting Wis. Stat. § 767.43(1) requires us to determine whether the pronoun "who" in the qualifying clause applies only to a "person" or also applies to grandparents, greatgrandparents, and stepparents. The list "grandparent, greatgrandparent, stepparent or person" immediately precedes the limiting clause "who has maintained a relationship similar to a parent-child relationship with the child." Applying the last-antecedent rule to the list limits "who" to the final item in the list — "person." Consequently, reading § 767.43(1) according to the last-antecedent canon supports the interpretation that a person seeking visitation rights under the subsection needs to prove that he or she has a parent-child relationship with the child only if the person is not a grandparent, greatgrandpar-ent, or stepparent. We think this is the more natural reading of the phrase.
¶ 31. Next, we expand the analysis of Wis. Stat. § 767.43 to consider subsection (1) in context with subsection (3). Subsection (3) reads as follows:
(3) Special Grandparent Visitation Provision. The court may grant visitation rights, with respect to a child, to a grandparent of the child if the child's parents have notice of the hearing and the court determines all of the following:
(a) The child is a nonmarital child whose parents have not subsequently married each other.
(b) Except as provided in sub. (4), the paternity of the child has been determined under the laws of this state or another jurisdiction if the grandparent filing the petition is a parent of the child's father.
(c) The child has not been adopted.
(d) The grandparent has maintained a relationship with the child or has attempted to maintain a *466 relationship with the child but has been prevented from doing so by a parent who has legal custody of the child.
(e) The grandparent is not likely to act in a manner that is contrary to decisions that are made by a parent who has legal custody of the child and that are related to the child's physical, emotional, educational or spiritual welfare.
(f) The visitation is in the best interest of the child.
(Capitalization omitted; emphasis added.)
¶ 32. The legislature explicitly included a relationship requirement for grandparents in subsection (3) but declined to do so in subsection (1). Under subsection (3), a court may grant visitation rights only if it determines, among other things, that" [t]he grandparent has maintained a relationship with the child or has attempted to maintain a relationship with the child but has been prevented from doing so." § 767.43(3)(d). Reading subsection (1) as requiring proof of a "parent-child relationship" would place a heavier burden on grandparents of marital children than subsection (3)'s mere "relationship" requirement for grandparents of non-marital children — despite the absence of the type of clear requirement that appears in subsection (3). This suggests that the Rogers interpretation of subsection (1) was not correct.
¶ 33. A review of the statutory history of Wis. Stat. § 767.43(1) further indicates that the legislature did not intend to require grandparents to prove a parent-child relationship with the child when petitioning for visitation. An earlier version of the grandparent visitation statute provided:
The court may grant reasonable visitation privileges to a grandparent or greatgrandparent of any minor child upon the grandparent's or greatgrandpar- *467 ent's petition to the court with notice to the parties if the court determines that it is in the best interests and welfare of the child and issue any necessary order to enforce the same.
Wis. Stat. § 767.245(4) (1985-86). Under this version of the statute, only a grandparent or greatgrandparent could petition for visitation rights — there was no provision for stepparents or other persons — and a grandparent or greatgrandparent petitioner did not need to prove the existence of any kind of relationship with the child.
¶ 34. In 1988 the legislature passed 1987 Wis. Act. 355. Section 38 of Act 355 amended the visitation statute to bring it closer to its current form. As amended, the statute read:
Upon petition by a grandparent, greatgrandpar-ent, stepparent or person who has maintained a relationship similar to a parent-child relationship with the child, the court may grant reasonable visitation rights to that person if the parents have notice of the hearing and if the court determines that visitation is in the best interest of the child.
Wis. Stat. § 767.245(1) (1987-88). An inline note, authored by the Legislative Council, accompanied section 38 of Act 355 and explained that the amendment " [e]xtend[ed] the current law permitting the court, upon petition, to grant visitation rights to a grandparent or greatgrandparent to: (1) a stepparent; and (2) any person who has maintained a relationship similar to a parent-child relationship with the child."
¶ 35. Taken together, the change to the language of the statute and the Legislative Council note provide compelling evidence that the legislature intended that the phrase "who has maintained a relationship similar *468 to a parent-child relationship with the child" should apply only to a "person" petitioning for visitation under the statute. Rather than placing more stringent requirements on grandparents and greatgrandparents filing motions under the statute, the legislature actually expanded the categories of people who might petition for visitation in any particular case by allowing stepparents and other persons to do so. The Legislative Council note then confirmed the expansive nature of the changes, making clear that the phrase "who has maintained a relationship similar to a parent-child relationship with the child" attaches only to a "person" petitioning for visitation rights while placing no such condition on petitions by grandparents, greatgrand-parents, and stepparents.
¶ 36. This characterization of Wis. Stat. § 767.43(1) and the accompanying Legislative Council note is consistent with this court's previous discussions of the statute's history, which have focused on the legislature's gradual expansion of visitation rights. In Holtzman, the court quoted the same note and indicated that " [t]he major change in 1988, as explained by the Legislative Council's Special Committee notes, was to extend the current law." Holtzman, 193 Wis. 2d at 672 (internal quotation mark omitted). Similarly, our discussion in Sporleder v. Hermes, 162 Wis. 2d 1002, 471 N.W.2d 202 (1991), overruled on other grounds by Holtzman, 193 Wis. 2d 659, implicitly associated the parent-child relationship requirement only with a "person" petitioning for visitation when noting that Wis. Stat. § 767.43(1) had been "amended to include a 'person who has maintained a relationship similar to a parent-child relationship with the child,' as persons who may petition for visitation rights." Sporleder, 162 Wis. 2d at 1016.
*469 ¶ 37. Nothing in Act 355's legislative history contradicts our reading of § 767.43(1). A review of the Act's drafting file indicates that the language at issue remained consistent with its present form throughout the drafting and amendment process. Additionally, an Analysis by the Legislative Reference Bureau— originally appended to a draft at the beginning of the legislation but later replaced by the Legislative Council notes already discussed — confirms our understanding of the legislature's intended change:
Under current law ... the court may provide visitation privileges to a grandparent or greatgrandparent if that is in the child's best interest. Under this bill, the current law permitting visitation by grandparents and greatgrandparents is extended to apply to stepparents, persons who have maintained a relationship similar to a parent-child relationship with the child and, under certain circumstances, any other person.
Drafting File for 1987 Wis. Act. 355, Analysis by the Legislative Reference Bureau of 1987 A.B. 205, Legislative Reference Bureau, Madison, Wis. Although this analysis did not appear with the final Act, it nevertheless indicates that — throughout the drafting process— the phrase "who has maintained a relationship similar to a parent-child relationship with the child" attached only to a person other than a grandparent, greatgrand-parent, or stepparent.
¶ 38. Collectively, these aspects of the context and history of Wis. Stat. § 767.43(1) support our reading of its language: the phrase "who has maintained a relationship similar to a parent-child relationship with the child" applies to a "person" seeking visitation but not to a grandparent, greatgrandparent, or stepparent.
*470 ¶ 39. We now evaluate the implications of this interpretation for parents' constitutional rights to direct the care, custody, and control of their children.
B. Wis. Stat. § 767.43(1) Does Not Unconstitutionally Infringe on Parents' Due Process Rights
¶ 40. In her brief and at oral argument, Nancy argued that interpreting the statute not to require grandparents, greatgrandparents, and stepparents to prove a parent-child relationship when seeking visitation would unconstitutionally interfere with parents' rights to raise their children. Citing Troxel v. Granville, 530 U.S. 57 (2000), she suggests that" [i]n order to respect the constitutionally protected liberty interest parents have, there must be a larger barrier to usurping parents' control than notice of hearing and a best interest inquiry." We conclude that the court of appeals appropriately addressed and resolved this contention in Roger D.H. v. Virginia O., 2002 WI App 35, 250 Wis. 2d 747, 641 N.W.2d 440.
¶ 41. In Troxel, the Supreme Court of the United States reaffirmed that the "Due Process Clause of the Fourteenth Amendment protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children." Troxel, 530 U.S. at 66. The case involved a State of Washington statute, which provided, "Any person may petition the court for visitation rights at any time including, but not limited to, custody proceedings. The court may order visitation rights for any person when visitation may serve the best interest of the child whether or not there has been any change of circumstances." Id. at 61 (quoting Wash. Rev. Code § 26.10.160(3) (1994)). Under that statute, the children's paternal grandparents sought an extensive visitation order following their son's death, but the *471 children's mother opposed the request, favoring short, monthly visits with the grandparents. Id. at 60-61. A state trial court had entered a visitation order after concluding that visitation with the grandparents would be in the children's best interest. Id. at 61-62.
¶ 42. A Plurality of the Supreme Court stopped short of holding the statute facially unconstitutional but did conclude that, as applied by the Washington court, the statute unconstitutionally interfered with the mother's rights to define the care, custody, and control of her children. Id. at 67, 73 (plurality opinion). The Plurality explained the important role that parents play in defining the best interests of their children:
The problem here is not that the Washington Superior Court intervened, but that when it did so, it gave no special weight at all to [the mother's] determination of her daughters' best interests. ... In effect, the judge placed on [the mother], the fit custodial parent, the burden of disproving that visitation would be in the best interest of her daughters.
Id. at 69. In limiting its determination to an as applied analysis, the Plurality commented, "Because much state-court adjudication in this context occurs on a case-by-case basis, we would be hesitant to hold that specific nonparental visitation statutes violate the Due Process Clause as a per se matter." Id. at 73.
¶ 43. Shortly after the Court decided Troxel, Wisconsin's court of appeals considered a facial challenge to Wis. Stat. § 767.43(1) in Roger D.H. A child's mother sought to vacate a court-approved stipulation granting visitation rights to the child's paternal grandmother. Roger D.H., 250 Wis. 2d 747, ¶¶ 4-5. She asserted that "Wis. Stat. § 767.245 is facially unconstitutional under Troxel because the statute does not require that *472 courts give presumptive weight to a fit parent's decision regarding non-parental visitation." Id., f 13.
¶ 44. The court of appeals rejected the facial challenge:
We glean from Troxel two propositions relevant to the issue before us. First, due process requires that courts apply a presumption that a fit parent's decision regarding non-parental visitation is in the best interest of the child. Second, a state court may read this requirement into a non-parental visitation statute, even when the statute is silent on the topic.
Accordingly, we hold that when applying Wis. Stat. § 767.245(3), circuit courts must apply the presumption that a fit parent's decision regarding grandparent visitation is in the best interest of the child. At the same time, we observe that this is only a presumption and the circuit court is still obligated to make its own assessment of the best interest of the child. What the Due Process Clause does not tolerate is a court giving no "special weight" to a fit parent's determination, but instead basing its decision on "mere disagreement" with the parent.
Id., ¶¶ 18-19 (citation omitted).
¶ 45. Although Roger D.H. involved the statute now codified at Wis. Stat. § 767.43(3), we conclude that the court of appeals' reasoning is equally appropriate with regard Wis. Stat. § 767.43(1). As under subsection (3), a court may grant visitation under subsection (1) only if the court determines that doing so would be in the child's best interest. The Supreme Court indicated in Troxel that any examination of a child's best interest must give special weight to a fit parent's own best interest determination. Troxel, 530 U.S. at 69 — 70 ("The decisional framework employed by the Superior Court directly contravened the traditional presumption that *473 a fit parent will act in the best interest of his or her child. In that respect, the court's presumption failed to provide any protection for [the mother's] fundamental constitutional right to make decisions concerning the rearing of her own daughters."). Troxel's presumption in favor of a fit parent's determination would apply to a court's evaluation of a § 767.43(1) visitation petition as a part of the best interest analysis — and the presumption would apply regardless of whether the petitioner proved a parent-child relationship with the child.
¶ 46. Thus, our holding — that the phrase "who has maintained a relationship similar to a parent-child relationship with the child" does not apply to a grandparent, greatgrandparent, or stepparent petitioning for visitation rights under § 767.43(1) — does not conflict with parental constitutional rights as set forth in Troxel. Whenever someone brings a visitation petition under § 767.43(1) — whether the petitioner is a grandparent, greatgrandparent, stepparent, or other person —Troxel requires that the deciding court give special weight to a fit parent's opinions regarding the child's best interest as part of any best interest determination.
¶ 47. We think it important to note that while our decision eliminates one unintended impediment for grandparents, greatgrandparents, and stepparents who seek visitation rights under Wis. Stat. § 767.43(1), it does not guarantee that they will prevail. The court must not only consider the constitutional rights of the parents but also decide, in its sound discretion, whether the facts and circumstances of the case warrant granting, modifying, or denying a visitation petition in the best interest of the child.
*474 IV. CONCLUSION
¶ 48. Examining Wis. Stat. § 767.43(1) in its present form, it is clear that the legislature has gradually expanded the number of persons who may petition for visitation rights. The current statute allows grandparents, greatgrandparents, and stepparents to petition for visitation rights, and it allows other persons to seek visitation as well, so long as they have "maintained a relationship similar to a parent-child relationship with the child." Given the legislature's history of expanding visitation rights and the fact that any court considering a child's best interests under Wis. Stat. § 767.43(1) must give special weight to fit parents' best interest determinations, we conclude that a grandparent, greatgrandparent, or stepparent need not prove a parent-child relationship in order to secure visitation rights under that subsection.
By the Court. — The decision of the court of appeals is reversed.
¶ 49. REBECCA G. BRADLEY, J., did not participate.

 S.A.M. v. Meister, No. 2014AP1283, unpublished slip op. (Wis. Ct. App. Feb. 5, 2015).

 All subsequent references to the Wisconsin Statutes are to the 2013-14 version unless otherwise indicated.

 Given that Carol, Jay, and Nancy share a surname, we will refer to them by first name throughout the opinion.

 For example, after filing her July 2013 motion for visitation rights, Carol wrote an October 2013 letter to the family *453 court commissioner alleging that Nancy objected to Carol's presence at the children's elementary school when Carol attempted to see the children at a September 2013 event that was open to the public.

 Michael D. Onheiber, Family Court Commissioner.

 The family court commissioner's order granting Carol's motion used the terms "placement" and "visitation" interchangeably. Recent decisions by the court of appeals have examined the extent to which the Wisconsin Statutes contemplate a consequential difference between placement and visitation. See Rick v. Opichka, 2010 WI App 23, 323 Wis. 2d 510, 780 N.W.2d 159; Lubinski v. Lubinski, 2008 WI App 151, 314 Wis. 2d 395, 761 N.W.2d 676. Because the parties in this case have not argued that the order improperly differentiated between placement and visitation, this opinion makes no comment on the extent of any difference between the two.

 William F. Hue, Judge.

 As noted above, Carol Meister filed the motion for visitation under Wis. Stat. § 767.43(1). She acted pro se. The grandchildren were represented on the motion by the guardian ad litem who had represented them from the beginning of the divorce. When Nancy Meister sought de novo review in circuit court and prevailed, the guardian ad litem appealed to the court of appeals on behalf of the children. The guardian ad litem also sought review in this court on their behalf.
*456 Standing has not been an issue in this case, and we do not see any prudential reason to make it an issue in this opinion.

 Rogers v. Rogers, 2007 WI App 50, 300 Wis. 2d 532, 731 N.W.2d 347, refers to Wis. Stat. § 767.245, the statute in effect at the time the visitation petition was filed. In 2006 the legislature renumbered Wis. Stat. § 767.245 as Wis. Stat. § 767.43. 2005 Wis. Act. 443, § 101.

 After the court became aware of Carol's passing, we ordered the parties to submit briefs addressing whether the case should proceed despite Carol's death. "Ordinarily, this court, like courts in general, will not consider a question the answer to which cannot have any practical effect upon an existing controversy." State ex rel. La Crosse Tribune v. Circuit Court for La Crosse Cty., 115 Wis. 2d 220, 228, 340 N.W.2d 460 (1983).
Both Nancy and the Meister children argue that this case qualifies for an exception to the general mootness rule. We agree. This court may decide an otherwise moot issue if the issue
(1) is of great public importance; (2) occurs so frequently that a definitive decision is necessary to guide circuit courts; (3) is likely to arise again and a decision of the court would alleviate uncertainty; or (4) will likely be repeated, but evades appellate review because the appellate review process cannot be completed or even undertaken in time to have a practical effect on the parties.
State v. Morford, 2004 WI 5, ¶ 7, 268 Wis. 2d 300, 674 N.W.2d 349; see also La Crosse Tribune, 115 Wis. 2d at 229. Because the interpretation of Wis. Stat. § 767.43(1) applies to every visitation petition by a grandparent, greatgrandparent, or stepparent under this subsection, we conclude that this case presents a question of great public importance that will occur frequently in the future. Given the disjuncture between the plain language of § 767.43(1) and the Rogers court's treatment of that language, a decision from this court resolves any uncertainty as to this particular facet of the statute's interpretation.

 Subsection (l)'s use of the phrase "that person" to refer back to any person who files a visitation motion under Wis. Stat. § 767.43(1) contributes to the ambiguity of the subsection. However, we view use of that phrase as unfortunate drafting rather than an indication of legislative intent because of the plethora of other writings by drafters that reveal and explain the language of the subsection.

 The grandparents' brief in Rogers made a similar statement of the law without providing additional explanation:
Section 767.245(1), Wisconsin Statutes, provides that a grandparent, among others, can petition the court for visitation rights where that grandparent has maintained a relationship similar to a parent-child relationship and the court may grant reasonable visitation rights to that person if the parents have notice of the hearing and if the court determines that the visitation was in the best interests of the child.

 Black's Law Dictionary provides a similar definition: "An interpretive principle by which a court determines that qualifying words or phrases modify the words or phrases immediately preceding them and not words of phrases more remote, unless the extension is necessary from the context or the spirit of the entire writing." Rule of the Last Antecedent, Black's Law Dictionary 1532-33 (10th ed. 2014). As an example, Black's explains that, "in the phrase Texas courts, New Mexico courts, and New York courts in the federal system, the words in the federal system might be held to modify only New York courts and not Texas courts or New Mexico courts." Id.
In his critique of the canons of interpretation, Karl Llewellyn presented the rule as two competing canons: "Qualifying or limiting words or clauses are to be referred to the next preceding antecedent," but "[n]ot when evident sense and meaning require a different construction." Karl N. Llewellyn, Remarks on the Theory of Appellate Decision and the Rules or Canons About How Statutes Are to Be Construed, 3 Vand. L. Rev. 395, 405 (1950).
More recently, Justice Scalia and Bryan Garner examined the rule's application in their book Reading Law. See Scalia & *464 Garner 144-46. Their discussion included contemporary and historic examples of the rule's use at the Supreme Court of the United States. Id. (first citing Barnhart v. Thomas, 540 U.S. 20, 27-28 (2003); then citing Sim's Lessee v. Irvine, 3 U.S. (3. Dali.) 425, 444 n.* (1799)). For a more recent example of the Supreme Court's application of the canon, in which the Court quoted from Black's and from Reading Law, see the Court's decision on March 1, 2016 in Lockhart v. United States, 136 S. Ct. 958 (2016).
In addition to the Vandervelde case cited in the text above, this court also has periodically applied the last-antecedent rule when interpreting statutes. See, e.g., Fuller v. Spieker, 265 Wis. 601, 603-05, 62 N.W.2d 713 (1954) (interpreting county ordinance to place time limit on mandatory but not discretionary leave for deputy sheriff where time limit language followed mandatory leave requirement); Serv. Inv. Co. v. Dorst, 232 Wis. 574, 576-78, 288 N.W. 169 (1939) (applying context exception where comma evinced intent for clause to modify all preceding clauses in list, rather than only the immediately preceding clause); cf. Stoker v. Milwaukee Cty., 2014 WI 130, ¶¶ 23-24, 359 Wis. 2d 347, 857 N.W.2d 102 (declining to apply last-antecedent canon in order to avoid absurd result).
Finally, the Legislative Reference Bureau's Wisconsin Bill Drafting Manual 2015-2016 (2014) (Bill Drafting Manual) suggests drafting with the last antecedent canon in mind. A section providing guidance with regard to word choice and phrasing encourages drafters to "modify only the words that you intend to modify." Bill Drafting Manual § 2.01(17m)(a), at 39. It explains that the phrase " 'licensees may hunt moose, deer, or ducks that are not on the endangered species list' is ambiguous." Id. After suggesting alternative sentence constructions that would avoid ambiguity, the manual cites state and federal cases in Wisconsin that interpreted statutes with unclear modifiers. Id. § 2.01(17m)(b)-(d), at 40. First among the cited cases is Vandervelde, which the manual cites for the proposition that "qualifying or limiting words in a statute generally refer to the nearest antecedent only." Id. § 2.01(17m)(d), at 40.