# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2017AP1142 |
| COMPLETE TITLE: | In the matter of the grandparental visitation of A. A. L.: In re the Paternity of A. A. L.: |

Cacie M. Michels,
        Petitioner-Appellant,
    v.
Keaton L. Lyons,
        Respondent-Appellant,
Jill R. Kelsey,
        Petitioner-Respondent.

ON CERTIFICATION FROM THE COURT OF APPEALS

| | |
|---|---|
| OPINION FILED: | May 24, 2019 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | November 7, 2018 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | Circuit |
| COUNTY: | Chippewa |
| JUDGE: | James M. Isaacson |

| | |
|---|---|
| JUSTICES: | |
| CONCURRED: | R.G. BRADLEY, J. concurs, joined by KELLY, J. (opinion filed). |
| DISSENTED: | |
| NOT PARTICIPATING: | |

ATTORNEYS:

For the petitioner-appellant and respondent-appellant, there were briefs filed by *Ryan J. Steffes* and *Weld Riley, S.C.*, Eau Claire. There was an oral argument by *Ryan J. Steffes*.

For the petitioner-respondent, there was a brief filed by *Jeffrey A. Mandell*, *Eileen M. Kelley*, *Anthony J. Menting*, and *Stafford Rosenbaum LLP*, Madison. There was an oral argument by *Jeffrey A. Mandell*.

An amicus curiae brief was filed on behalf of State of Wisconsin by *Kevin M. LeRoy,* deputy solicitor general, with whom on the brief was *Brad D. Schimel*, attorney general, and *Misha Tseytlin*, solicitor general. There was an oral argument by *Kevin M. LeRoy*.

An amicus curiae brief was filed on behalf of Legal Aid Society of Milwaukee, Inc. by *Karen Kotecki* and *Legal Aid Society of Milwaukee*, Milwaukee.

An amicus curiae brief was filed in the court of appeal on behalf of National Association of Parents, Inc. by *Janet McDonough* and *National Association of Parents, Inc.,* Chippewa Falls.

An amicus curiae brief was filed on behalf of Cato Institute by *Joseph S. Diedrich* and *Husch Blackwell LLP*, Madison; with whom on the brief was *Ilya Shapiro*, Washington, District of Columbia.

An amicus curiae brief was filed on behalf of Grandparents Advocate of America, Inc. and Alienated Grandparents Anonymous, Incorporated by *John S. Skilton*, *David R. Pekarek Krohn*, *Emily J. Greb*, and *Perkins Coie LLP*, Madison.

2019 WI 57

NOTICE

This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.

No.   2017AP1142
(L.C. No.  2010FA206)

STATE OF WISCONSIN           :           IN SUPREME COURT

**In the matter of the grandparental visitation of A. A. L.:**
**In re the Paternity of A. A. L.:**

**Cacie M. Michels,**

　　　　**Petitioner-Appellant,**

　　**v.**

**Keaton L. Lyons,**

　　　　**Respondent-Appellant,**

**Jill R. Kelsey,**

　　　　**Petitioner-Respondent.**

**FILED**

**MAY 24, 2019**

Sheila T. Reiff
Clerk of Supreme Court

---

APPEAL from an order of the Circuit Court for Chippewa County, James M. Isaacson, Judge. *Vacated.*

¶1  REBECCA FRANK DALLET, J.  We accepted certification from the court of appeals to clarify the standard of proof required for a grandparent to overcome the presumption that a fit parent's visitation decision is in the child's best

interest.[1]  We further resolve an interrelated challenge to the constitutionality of Wis. Stat. § 767.43(3)(2015-16),[2] (the "Grandparent Visitation Statute") as applied to a circuit court order granting a petition for visitation over the objection of two fit parents.[3]

¶2  We recognize that a fit parent has a fundamental liberty interest in the care and upbringing of his or her child and therefore, the Grandparent Visitation Statute must withstand strict scrutiny.  We confirm that the Grandparent Visitation Statute is facially constitutional because there are circumstances under which the law can be constitutionally enforced.  We determine that the Grandparent Visitation Statute is narrowly tailored to further a compelling state interest because a grandparent must overcome the presumption in favor of a fit parent's visitation decision with clear and convincing evidence that the decision is not in the child's best interest.  Lastly, we conclude that the Grandparent Visitation Statute is unconstitutional as applied because Kelsey did not overcome the presumption in favor of Lyons and Michels' visitation decision with clear and convincing evidence that their decision is not in

_____

[1] Michels v. Lyons, No. 2017AP1142, unpublished certification (Wis. Ct. App. May 8, 2018).

[2] All subsequent references to the Wisconsin Statutes are to the 2015-16 version unless otherwise indicated.

[3] The Honorable James M. Isaacson of Chippewa County Circuit Court presided.

2

A.A.L.'s best interest. The order of the circuit court is vacated.

## I. FACTUAL BACKGROUND AND PROCEDURAL POSTURE

¶3 This case arises out of a dispute between the parents of A.A.L., Cacie Michels and Keaton Lyons, and Lyons' mother Jill Kelsey. Lyons and Michels were never married but lived together when A.A.L. was born in October 2009 until they broke up in late 2011. Since then, Michels has had primary custody of A.A.L. and Lyons has had extended periods of placement. Prior to A.A.L. starting kindergarten in the fall of 2015, A.A.L. spent a significant amount of time with Kelsey, including overnight stays. After A.A.L. started kindergarten, Lyons and Michels agreed to reduce the amount of time A.A.L. spent with Kelsey in order to accommodate A.A.L.'s new commitments with school and friends, as well as her previously agreed upon placement time with Lyons on alternate weekends.

¶4 At the end of 2015, Kelsey's relationship with Lyons and Michels began to deteriorate due to a disagreement over a proposed vacation to Disney World and Kelsey's decreased visitation time with A.A.L. Even though the relationship was deteriorating, Lyons and Michels still arranged for Kelsey to spend time with A.A.L. Shortly thereafter, Kelsey intervened in Michels' paternity action and filed a petition for additional visitation pursuant to the Grandparent Visitation Statute.

¶5 At the court trial, Lyons and Michels testified that they decided to decrease Kelsey's visitation time because of the strain on A.A.L.'s schedule. They also expressed concern over

3

Kelsey's judgment, as she allowed A.A.L. to ride a horse without a safety helmet, contrary to their explicit instructions, and she gave four-year-old A.A.L. a sip of alcohol. Both Lyons and Michels testified that granting Kelsey's petition is not in A.A.L.'s best interest. However, both Lyons and Michels also testified that they would not completely eliminate Kelsey's visitation with A.A.L. unless they felt that visitation was unhealthy for A.A.L. or not in her best interest.

¶6 Lyons and Michels also testified at the court trial about a gentleman's agreement that the parties had in place after September 2016. Kelsey was allowed to see A.A.L. every other weekend for five hours, which occurred during the weekends when Lyons had his placement time with A.A.L. Lyons and Michels expressed their frustration with A.A.L. splitting time between three households, as it was difficult and exhausting for her. Lyons also testified about his frustration with the schedule because it was not beneficial for his relationship with A.A.L. Both Lyons and Michels indicated that they preferred an informal schedule they could set themselves to accommodate all of A.A.L.'s commitments and let them "make decisions for [their child] as parents do."

¶7 Despite finding that Lyons and Michels were not only fit parents but "good parents," the circuit court granted Kelsey's petition. The circuit court ordered visitation at least one Sunday each month for five hours and granted Kelsey "a seven-day period during [A.A.L.'s] summer vacation whereby she may take [A.A.L.] to Disney World or other vacation."

4

¶8 Lyons and Michels moved for reconsideration of the circuit court's order, asserting that the order violated their due process rights. The circuit court denied the motion and decided that pursuant to Roger D.H. v. Virginia O., 2002 WI App 35, 250 Wis. 2d 747, 641 N.W.2d 440, it could constitutionally overrule Lyons and Michels' visitation decision as long as it applied a presumption in their favor and determined that visitation was in A.A.L.'s best interest.[4]

¶9 The court of appeals certified an appeal to this court to clarify the standard of proof required for a grandparent to overcome the presumption that a fit parent's visitation decision is in the child's best interest. Additionally, the court of appeals asked for clarification as to the impact this court's holding would have on the Meister, Martin L., and Roger D.H. cases. S.A.M. v. Meister, 2016 WI 22, 367 Wis. 2d 447, 876 N.W.2d 746; Martin L. v. Julie R.L., 2007 WI App 37, 299 Wis. 2d 768, 731 N.W.2d 288; Roger D.H., 250 Wis. 2d 747. In addition to answering these questions, we resolve Lyons and Michels' challenge to the constitutionality of the Grandparent Visitation Statute as applied to the circuit court order overruling their decision regarding the care and upbringing of A.A.L.

---

[4] In its order regarding Lyons and Michels' motion for reconsideration, the circuit court limited the date range for Kelsey's summer trip with A.A.L. and provided some guidelines as to the trip.

5

## II.  STANDARD OF REVIEW

¶10 Lyons and Michels assert that the Grandparent Visitation Statute is unconstitutional as applied because it violates their substantive due process rights protected by the Fourteenth Amendment to the United States Constitution.  State v. Wood, 2010 WI 17, ¶17, 323 Wis. 2d 321, 780 N.W.2d 63.  The Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV.  The United States Supreme Court has long recognized that the Fourteenth Amendment's Due Process Clause includes a substantive component that "provides heightened protection against government interference with certain fundamental rights and liberty interests."  Washington v. Glucksberg, 521 U.S. 702, 720 (1997); see also Monroe Cty. Dep't of Human Servs. v. Kelli B., 2004 WI 48, ¶19, 271 Wis. 2d 51, 678 N.W.2d 831.  "An individual's substantive due process rights protect against a state action that is arbitrary, wrong, or oppressive . . . ."  Wood, 323 Wis. 2d 321, ¶17.  "A court's task in a challenge based on substantive due process 'involves a definition of th[e] protected constitutional interest, as well as identification of the conditions under which competing state interests might outweigh it.'"  Id., ¶18 (quoted source omitted).

¶11 There are two major types of constitutional challenges:  facial and as-applied.  Tammy W-G. v. Jacob T., 2011 WI 30, ¶46, 333 Wis. 2d 273, 797 N.W.2d 854.  "When a party challenges a law as being unconstitutional on its face, he or

6

she must show that the law cannot be enforced 'under any circumstances.'" Mayo v. Wisconsin Injured Patients and Families Comp. Fund, 2018 WI 78, ¶33, 383 Wis. 2d 1, 914 N.W.2d 678 (quoted source omitted). On the other hand, in an as-applied challenge, we consider the facts of the particular case in front of us and "the challenger must show that his or her constitutional rights were actually violated." Wood, 323 Wis. 2d 321, ¶13.

¶12 Whether a statute, as applied, violates the constitutional right to due process is a question of law that this court reviews de novo. Kelli B., 271 Wis. 2d 51, ¶16. In an as-applied challenge, this court presumes that the statute is constitutional, but does not presume that the State applied the statute in a constitutional manner. Tammy W-G., 333 Wis. 2d 273, ¶48. To prevail on an as-applied challenge, the challenging party "must prove beyond a reasonable doubt that as applied to him or her the statute is unconstitutional." Mayo, 383 Wis. 2d 1, ¶58. If successful, the operation of law is void only as to the challenging party. Wood, 323 Wis. 2d 321, ¶13.

¶13 Lyons and Michels challenge the interpretation and application of the Grandparent Visitation Statute, which reads:

> (3) The court may grant reasonable visitation rights, with respect to a child, to a grandparent of the child if the child's parents have notice of the hearing and the court determines all of the following:
>
> (a) The child is a nonmarital child whose parents have not subsequently married each other.

7

(b) Except as provided in sub. (4), the paternity of the child has been determined under the laws of this state or another jurisdiction if the grandparent filing the petition is a parent of the child's father.

(c) The child has not been adopted.

(d) The grandparent has maintained a relationship with the child or has attempted to maintain a relationship with the child but has been prevented from doing so by a parent who has legal custody of the child.

(e) The grandparent is not likely to act in a manner that is contrary to decisions that are made by a parent who has legal custody of the child and that are related to the child's physical, emotional, educational or spiritual welfare.

(f) The visitation is in the best interest of the child.

Wis. Stat. § 767.43(3). The meaning and application of a statute are questions of law that this court reviews de novo. Meister, 367 Wis. 2d 447, ¶19.

## III. ANALYSIS

¶14 We first recognize the fundamental liberty interest at stake and establish the appropriate level of scrutiny to apply to the Grandparent Visitation Statute. We then determine the constitutionality of the Grandparent Visitation Statute facially and as applied and, as a part of the analysis, we answer the certified question.

### A. Lyons and Michels have a fundamental liberty interest in the care and upbringing of A.A.L.

¶15 Lyons and Michels assert that they have a fundamental liberty interest in the care and upbringing of A.A.L. and contend that the circuit court infringed upon this interest when it overruled their decision regarding A.A.L.'s visitation

8

with Kelsey. "[T]he interest of parents in the care, custody, and control of their children [] is perhaps the oldest of the fundamental liberty interests recognized" by the United States Supreme Court. Troxel v. Granville, 530 U.S. 57, 65 (2000). This fundamental liberty protected by the Due Process Clause includes the right of parents to "establish a home and bring up children," Meyer v. Nebraska, 262 U.S. 390, 399 (1923), and "to direct the upbringing and education of children under their control." Pierce v. Society of Sisters, 268 U.S. 510, 534-35 (1925). See also Santosky v. Kramer, 455 U.S. 745, 753 (1982) (noting the United States Supreme Court's "historical recognition that freedom of personal choice in matters of family life is a fundamental liberty interest protected by the Fourteenth Amendment"); Prince v. Massachusetts, 321 U.S. 158, 166 (1944) (acknowledging the existence of a "private realm of family life which the state cannot enter.")

¶16 In Troxel, a plurality of the United States Supreme Court concluded that a Washington statute allowing a court to grant third-party visitation whenever "visitation may serve the best interest of the child" violated a fit parent's due process right to make decisions concerning the care, custody, and control of her daughters. Troxel, 530 U.S. at 61. The Troxel court held that "so long as a parent adequately cares for his or her children (i.e., is fit), there will normally be no reason for the State to inject itself into the private realm of the family to further question the ability of that parent." Id. at 68-69. A majority of the United States Supreme Court Justices

9

in Troxel recognized that a fit parent's fundamental right to direct the upbringing of his or her child is implicated where a non-parent third-party petitions for visitation.[5]

¶17 When faced with the question of whether a parent who has developed a relationship with his or her child has a fundamental liberty interest in the child's care and upbringing, this court has answered in the affirmative. See, e.g., Tammy W-G., 333 Wis. 2d 273, ¶52 ("Parents who have developed a relationship with their children have a fundamental liberty interest in the 'care, custody, and control of their children.'" (quoted source omitted)); Kenosha Cty. Dep't of Human Servs. v. Jodie W., 2006 WI 93, ¶41, 293 Wis. 2d 530, 716 N.W.2d 845 ("Because [the mother] has a fundamental liberty interest in parenting [her son], any statute that infringes upon this interest is subject to strict scrutiny review"); Kelli B., 271 Wis. 2d 51, ¶23 ("[T]he question is whether a parent who has a substantial relationship with his or her child has a fundamental liberty interest in parenting the child. Our case law recognizes this fundamental liberty interest."). We conclude that in accordance with jurisprudence from the United States Supreme Court and this court, Lyons and Michels have a fundamental liberty interest in the care and upbringing of A.A.L.

---

[5] Troxel v. Granville, 530 U.S. 57, 67-68 (2000) (O'Connor, J., Rehnquist, J., Ginsburg, J., Breyer, J.), 77-79 (Souter, J., concurring), 80 (Thomas, J., concurring), 95 (Kennedy, J., dissenting).

10

B. The Grandparent Visitation Statute must withstand strict scrutiny because it directly and substantially infringes upon a fundamental liberty interest.

¶18 A statute which directly and substantially infringes upon a fundamental liberty interest must withstand strict scrutiny:  it must be narrowly tailored to serve a compelling state interest.  See, e.g., Reno v. Flores, 507 U.S. 292, 302 (1993).  Although Kelsey seemingly acknowledges that Lyons and Michels have a fundamental liberty interest in the care and upbringing of A.A.L., she asserts that this court should not apply strict scrutiny because this was a "minor intrusion" on a fundamental liberty interest.  Kelsey relies on the Troxel plurality, which avoided "the precise scope of the parental due process right in the visitation context."  Troxel, 530 U.S. at 73.

¶19 Because matters involving visitation occur on a case-by-case basis, the Troxel court was "hesitant to hold that specific nonparental visitation statutes violate the Due Process Clause as a per se matter."  Id.  The plurality in Troxel thus left the constitutionality of any specific statute awarding visitation to be determined by a state court based upon the manner in which the statute is applied.  Id.

¶20 Although the Troxel plurality did not employ a strict scrutiny analysis in striking down a broad-sweeping third-party

11

visitation statute,[6] the United States Supreme Court reaffirmed in Troxel that "the Due Process Clause does not permit a State to infringe on the fundamental right of parents to make child rearing decisions simply because a state judge believes a 'better' decision could be made." Id. at 72-73. The Troxel court held that if a fit parent's decision regarding grandparent visitation becomes subject to judicial review, a court must give "special weight" to a parent's determination of what is in the child's best interest. Id. at 68-70.

¶21 Post-Troxel, the majority of courts that have considered this issue have concluded that statutes permitting a grandparent to petition for visitation infringe upon the fundamental right to parental autonomy and therefore are subject to strict scrutiny. See, e.g., Moriarty v. Bradt, 827 A.2d 203, 222 (N.J. 2003) ("Because the Grandparent Visitation Statute is an incursion on a fundamental right (the right to parental autonomy) . . . it is subject to strict scrutiny and must be narrowly tailored to advance a compelling state interest"); see also Doe v. Doe, 172 P.3d 1067 (Haw. 2007); Koshko v. Haining, 921 A.2d 171 (Md. 2007); Howard v. Howard, 661 N.W.2d 183 (Iowa 2003); Roth v. Weston, 789 A.2d 431 (Conn. 2002).

---

[6] However, Justice Clarence Thomas in his Troxel concurrence made clear that he would apply strict scrutiny: "[T]he State of Washington lacks even a legitimate governmental interest——to say nothing of a compelling one——in second-guessing a fit parent's decision regarding visitation with third parties." Troxel, 530 U.S. at 80.

12

¶22 We conclude that because the Grandparent Visitation Statute directly and substantially implicates a fit parent's fundamental liberty interest in the care and upbringing of his or her child, it is subject to strict scrutiny review.

C. We confirm that the Grandparent Visitation Statute is facially constitutional because there are circumstances under which the law can be constitutionally enforced.

¶23 When we apply strict scrutiny to a statute, we will conclude it is facially constitutional only if it is narrowly tailored to further a compelling state interest. See Milwaukee Branch of NAACP v. Walker, 2014 WI 98, ¶22, 357 Wis. 2d 469, 851 N.W.2d 262. Kelsey asserts that the Grandparent Visitation Statute furthers a compelling state interest "to contribute to the child's well-being by providing a sense of continuity" within a non-intact family.[7] Kelsey further maintains that the rebuttable presumption that a fit parent's decision regarding grandparent visitation is in the best interest of the child as set forth in Roger D.H., 250 Wis. 2d 747, ¶¶19-21, ensures that visitation orders are narrowly tailored to achieve this purpose. In Roger D.H., the court of appeals saved the Grandparent Visitation Statute from facial invalidity by reading into the statute a requirement that circuit courts apply the presumption

---

[7] We recognize that there may be substantial benefits to a child to have close and sustained ties with extended family and that grandparents can serve an important role in a child's life. See, e.g., Roth v. Weston, 789 A.2d 431, 447 (Conn. 2002). We also recognize that in many families the preservation of intergenerational relationships has value as a social ideal. See Herbst v. Sayre, 971 P.2d 395, 399 (Okla. 1998).

13

that a fit parent's visitation decision is in the best interest of his or her child, in accordance with Troxel.[8]  Roger D.H, 250 Wis. 2d 747, ¶12.  According to Kelsey, the presumption, followed by the best interest inquiry, resulted in a grandparent visitation order in this case that was narrowly tailored to protect Lyons and Michels' fundamental liberty interest in the care and upbringing of A.A.L.

¶24 The State must respect a fit parent's fundamental liberty interest to make decisions regarding the care, custody, and control of his or her child, yet also recognize when intervention may be necessary to protect a child's best interest.  Where a child's physical or mental health or welfare is in jeopardy, the State has a well-established legitimate interest under its parens patriae power, acting from the viewpoint and in the interest of the child.  See Santosky, 455 U.S. at 766; see also Parham v. J.R., 442 U.S. 584, 603 (1979) ("[A] state is not without constitutional control over parental discretion in dealing with children when their physical or mental health is jeopardized.").  Pursuant to this court's jurisprudence, visitation law is "concerned with identifying the triggering events that may justify state intervention," which

---

[8] In Roger D.H. v. Virginia O., 2002 WI App 35, ¶19, 250 Wis. 2d 747, 641 N.W.2d 440, the court of appeals concluded that the circuit court improperly read into Wis. Stat. § 767.245(3), the prior version of the Grandparent Visitation Statute, a requirement that a circuit court find a parent unfit prior to interfering with the parent's visitation decision.

14

must be more than a claim that third-party visitation is in a child's best interest.  See Holtzman v. Knott, 193 Wis. 2d 649, 668, 533 N.W.2d 419 (1995).

¶25 Historically, there have been three main avenues to achieving grandparent visitation, now codified at:  (1) Wis. Stat. § 48.925, which allows a relative who has maintained a relationship with a child similar to a parent-child relationship to seek visitation after a child has been adopted by a stepparent or relative;[9] (2) Wis. Stat. § 54.56, which allows a

---

[9] Wisconsin Stat. § 48.925, in pertinent part, reads:

Upon petition by a relative who has maintained a relationship similar to a parent-child relationship with a child who has been adopted by a stepparent or relative, the court, subject to subs. (1m) and (2), may grant reasonable visitation rights to that person if the petitioner has maintained such a relationship within 2 years prior to the filing of the petition, if the adoptive parent or parents, or, if a birth parent is the spouse of an adoptive parent, the adoptive parent and birth parent, have notice of the hearing and if the court determines all of the following:

(a) That visitation is in the best interest of the child.

(b) That the petitioner will not undermine the adoptive parent's or parents' relationship with the child or, if a birth parent is the spouse of an adoptive parent, the adoptive parent's and birth parent's relationship with the child.

(c) That the petitioner will not act in a manner that is contrary to parenting decisions that are related to the child's physical, emotional, educational or spiritual welfare and that are made by the adoptive parent or parents or, if a birth parent is the spouse of an adoptive parent, by the adoptive parent and birth parent.

grandparent to file a petition for visitation upon the death of a parent of the child;[10] and (3) Wis. Stat. § 767.43, which encompasses the Grandparent Visitation Statute at issue in this case.

¶26 An analysis of the Wisconsin statutes that allow a grandparent to petition for visitation illustrates that the events triggering intervention by the State historically related to circumstances separating families. See Holtzman, 193 Wis. 2d at 680. This court has previously detailed the legislative history of the current Wis. Stat. ch. 767 visitation statute, which began with the enactment of Wis. Stat. § 247.24(1)(c) (1975-76).[11] Id. at 668-78. Section 247.24(1)(c) permitted the circuit court to grant grandparent visitation only upon the rendering of a judgment of annulment, divorce or legal

---

[10] Wisconsin Stat. § 54.56, in pertinent part, reads: "If one or both parents of a minor are deceased and the minor is in the custody of the surviving parent or any other person, a grandparent or stepparent of the minor may petition for visitation privileges with respect to the minor . . . ." Pursuant to the statute, the circuit court must determine that the visitation is in the best interest of the minor.

[11] Wisconsin Stat. § 247.24(1)(c) (1975-76) reads:

(1) In rendering a judgment of annulment, divorce or legal separation, the court may:

....

(c) Grant reasonable visitation privileges to a grandparent of any minor child if the court determines that it is in the best interest and welfare of the child and issue any necessary order to enforce the same.

separation.  Id.  Even after this limiting language was eliminated with the codification of Wis. Stat. § 767.245(4) (1977-78), the legislative history demonstrates an intent by the legislature to address visitation issues prompted by the divorce or legal separation of a married couple.  Id. at 670-73.[12]

¶27 The Grandparent Visitation Statute was enacted to provide grandparents with the ability to petition for visitation outside of a divorce or visitation proceeding.  See Drafting File for 1995 Act 68, Analysis by the Legislative Reference Bureau of 1995 S.B. 55, Legislative Reference Bureau, Madison, Wis.  It is still limited, however, to a family unit involving a "nonmarital child" whose parents have not subsequently married each other and who has not been adopted.  See Wis. Stat. §§ 767.43(3)(a) and (c).

¶28  In cases interpreting visitation statutes, Wisconsin courts have permitted intervention by the State to protect the child's best interest in circumstances where a child is being separated from a parent.  See Holtzman, 193 Wis. 2d at 680; see also Cox v. Williams, 177 Wis. 2d 433, 502 N.W.2d 128 (1993); Sporleder v. Hermes, 162 Wis. 2d 1002, 471 N.W.2d 202 (1991); Soergel v. Raufman, 154 Wis. 2d 564, 453 N.W.2d 624 (1990).

---

[12] According to a Legislative Reference Bureau analysis, the 1975 precursor to the Wisconsin Stat. ch. 767 grandparent visitation statute "codifies the authority of the court in actions affecting marriage to grant visitation privileges to grandparents where it is in the best interest of the child." See Holtzman v. Knott, 193 Wis. 2d 649, 682 n.28, 533 N.W.2d 419 (1995).

17

More recently, in upholding Wis. Stat. § 54.56(2) against an equal protection challenge, the court of appeals reasoned that maintaining the contiguity of a relationship with a grandparent when a parent dies creates a compelling state interest to protect a child's best interest. Rick v. Opichka, 2010 WI App 23, ¶22, 323 Wis. 2d 510, 780 N.W.2d 159. The Opichka court also reasoned that the rebuttable presumption in favor of the surviving parent ensures that the statute is narrowly tailored to achieve this compelling interest. Id.

¶29 Similarly, other jurisdictions recognize the appropriateness of a court interfering in a parent-child relationship to protect the child's best interest under circumstances where a family unit is dissolving and a parent seeks to sever the child's relationship with a grandparent with whom the child is emotionally attached. Prior to granting a petition for grandparent visitation, a majority of state statutes require a triggering event dissolving the family unit, such as the death or abandonment of a parent, divorce, or the child residing with a third party prior to granting a petition for grandparent visitation. See, e.g., Ala. Code 1975 § 30-3-4.2 (Alabama); A.R.S. § 25-409 (Arizona); A.C.A. § 9-13-103 (Arkansas); C.R.S.A. § 19-1-117 (Colorado); IC 31-17-5-1 (Indiana); M.G.L.A. 119 § 39D (Massachusetts); M.C.L.A. 722.27b (Michigan); 23 Pa.C.S.A. § 5325 (Pennsylvania); V.T.C.A., Family Code § 153.433 (Texas). Like the Grandparent Visitation Statute, some states include a child born out of wedlock as a triggering event to a petition for grandparent visitation. See,

18

e.g., Ala. Code 1975 § 30-3-4.2 (Alabama); A.R.S. §25-409 (Arizona); IC 31-17-5-1 (Indiana); M.G.L.A. 119 § 39D (Massachusetts); 43 Okl.St.Ann. § 109.4 (Oklahoma).

¶30 In addition to the statutory precursor of a dissolving family unit, the majority of jurisdictions also require a grandparent to demonstrate that absent visitation, the child will suffer some form of emotional harm. This harm requirement appears either within state statutes or has been read into the statutes by courts in order to survive constitutional challenges.[13]

¶31 A review of cases where other courts have upheld grandparent visitation orders indicate the presence of a relationship similar to that of a primary caregiver between the grandparents and grandchildren and a parent's abrupt attempt to end that relationship. See, e.g., Smith v. Wilson, 90 So.3d 51 (Miss. 2012) (visitation order upheld where children lived with maternal grandparents for several years after mother's death and father ended visitation once remarried); Uzelac v. Thurgood, 144 P.3d 1083 (Ut. 2006) (visitation order upheld where child lived with maternal grandparents for three years and was regularly

---

[13] See, e.g., Jones v. Jones, 2013 UT App 174, 307 P.3d 598 (Utah Ct. App. 2013); Doe v. Doe, 172 P.3d 1067 (Haw. 2007); Koshko v. Haining, 921 A.2d 171 (Md. 2007); Howard v. Howard, 661 N.W.2d 183 (Iowa 2003); Moriarty v. Bradt, 827 A.2d 203 (N.J. 2003); Glidden v. Conley, 820 A.2d 197 (Vt. 2003); Roth, 789 A.2d 431 (Conn. 2002), superseded by statute, Conn. Gen. Stat. § 46b-59 (2018); Williams v. Williams, 501 S.E.2d 417 (Va. 1998); Brooks v. Parkerson, 454 S.E.2d 769 (Ga. 1995); Hawk v. Hawk, 855 S.W.2d 573 (Tenn. 1993).

cared for by her grandparents throughout her life and father denied grandparent visitation following mother's sudden death); Spaulding v. Williams, 793 N.E.2d 252 (Ind. Ct. App. 2003) (visitation order upheld where the child and mother lived with maternal grandparents and they took care of the child on a daily basis but father denied visitation for five months after mother's death).

¶32 The concurrence asserts that the Grandparent Visitation Statute is facially unconstitutional but fails to meet the high burden required for a facial challenge. In order to succeed on a facial challenge, the "challenger must meet the highest level of proof, beyond a reasonable doubt." Mayo, 383 Wis. 2d 1, ¶33; see also ¶72 ("A facial challenge requires near-absolute proof that any application of the statute is unconstitutional.") (R.G. Bradley, J., concurring). A facial challenge therefore "attacks the law itself as drafted by the legislature, claiming the law is void from its beginning to the end and that it cannot be constitutionally enforced under any circumstances." Society Ins. v. LIRC, 2010 WI 68, ¶26, 326 Wis. 2d 444, 786 N.W.2d 385. The concurrence acknowledges a compelling state interest for state intervention where parental unwillingness results in a substantial risk of emotional harm to the child, concurrence, ¶¶52-54, and thus fails to demonstrate that "the law cannot be enforced 'under any circumstances.'" Mayo, 383 Wis. 2d 1, ¶33 (quoted source omitted).

¶33 Furthermore, a determination that the Grandparent Visitation Statute is facially unconstitutional would

20

necessarily require us to overturn our 2016 decision in Meister, 367 Wis. 2d 447. In Meister, we denied a facial challenge to Wis. Stat. § 767.43(1), a provision that broadly allows reasonable grandparent visitation with marital children upon a circuit court's determination that the visitation is in the child's best interest.[14] In so doing, we concluded that the reasoning employed in Roger D.H. upholding the facial validity of the Grandparent Visitation Statute was "equally appropriate with regard [to] [] § 767.43(1)." Id., ¶45. We do not disturb Meister and Roger D.H. to the extent that they upheld the Grandparent Visitation Statute as facially constitutional.[15] Because there are circumstances under which the Grandparent Visitation Statute can be constitutionally enforced, as

---

[14] In S.A.M. v. Meister, 2016 WI 22, ¶2, 367 Wis. 2d 447, 876 N.W.2d 746, this court analyzed the statutory text of Wis. Stat. § 767.43(1), which allowed a "'grandparent, greatgrandparent, stepparent or person who has maintained a relationship similar to a parent-child relationship with the child'" to file for visitation. This court concluded that the "parent-child relationship" requirement applied only to the "'person'" category and not to grandparents, great-grandparents, and stepparents. Id.

[15] The doctrine of stare decisis is of particularly important concern here where this court "has authoritatively interpreted a statute" and the legislature "remains free to alter its construction" if it believes that we interpreted the statute incorrectly. Progressive N. Ins. Co. v. Romanshek, 2005 WI 67, ¶45, 281 Wis. 2d 300, 697 N.W.2d 417. To overturn a prior interpretation there must be a showing that the decision was "'mistaken but also that it was objectively wrong, so that the court has a compelling reason to overrule it.'" Id. (citing Wenke v. Gehl Co., 2004 WI 103, ¶21, 274 Wis. 2d 220, 682 N.W.2d 405).

21

acknowledged by the concurrence, the Grandparent Visitation Statute remains constitutional on its face.

D.  The Grandparent Visitation Statute is narrowly tailored to further a compelling state interest because a grandparent must overcome the presumption in favor of a fit parent's visitation decision with clear and convincing evidence that the decision is not in the child's best interest.

¶34 We turn to the certified question in the context of the constitutional challenge and ask:  is the Grandparent Visitation Statute narrowly tailored to further a compelling state interest where a grandparent is required to overcome the presumption in favor of a fit parent's visitation decision with clear and convincing evidence that the decision is not in the child's best interest?  The degree of proof in a particular proceeding is traditionally for the judiciary to decide. Woodby v. Immigration and Naturalization Serv., 385 U.S. 276, 284 (1966).  We have previously identified two different burdens of proof that apply in civil actions:  "preponderance of the evidence" and "clear and convincing evidence."  State v. Walberg, 109 Wis. 2d 96, 102, 325 N.W.2d 687 (1982).  The preponderance of the evidence standard applies in ordinary civil actions.  Id.  The clear and convincing standard applies in cases where public policy requires a higher standard of proof than in the ordinary civil action.  Id.  This so-called middle burden of proof has been required in cases where the individual interests at stake are "'particularly important'" and "'more substantial than mere loss of money.'"  Santosky, 455 U.S. at 756 (quoting Addington v. Texas, 441 U.S. 418, 424 (1979)).  For

22

example, Wisconsin courts have applied a clear and convincing standard in cases involving fraud, undue influence, prosecutions of civil ordinance violations, and civil commitment. See Wahlberg, 109 Wis. 2d at 102; see also State v. West, 2011 WI 83, ¶¶76-77, 336 Wis. 2d 578, 800 N.W.2d 929.

¶35 A number of courts require clear and convincing evidence to overcome the presumption that a fit parent's visitation decision is in the child's best interest.[16] These courts maintain that the elevated standard of proof is necessary to protect the rights of parents. See, e.g., Polasek v. Omura, 136 P.3d 519, 523 (Mt. 2006) (reasoning that the close scrutiny that applies to any infringement on a person's right to parent a child requires a clear and convincing standard); N.F. v. R.A., 137 P.3d 318, 319 (Colo. 2006) (maintaining that the clear and convincing evidence standard will accord due process to parents as it does in the parental rights termination context); Vibbert v. Vibbert, 144 S.W.3d 292, 295 (Ky. Ct. App. 2004) (noting that the clear and convincing evidence standard applies because "'the individual interests at stake . . . are both particularly important and more substantial than mere loss of money'"); Evans

---

[16] See, e.g., Walker v. Blair, 382 S.W.3d 862, 871 (Ky. 2012); Zimmer v. Zimmer, 781 N.W.2d 482, 488 (S.D. 2010); SooHoo v. Johnson, 731 N.W.2d 815, 824 (Minn. 2007); N.F. v. R.A., 137 P.3d 318, 327 (Colo. 2006); Polasek v. Omura, 136 P.3d 519, 523 (Mont. 2006); Hamit v. Hamit, 715 N.W.2d 512 (Neb. 2006); Vibbert v. Vibbert, 144 S.W.3d 292, 295 (Ky. Ct. App. 2004); Camburn v. Smith, 586 S.E.2d 565, 580 (S.C. 2003); L.B.S. v. L.M.S., 826 So.2d 178, 186 (Ala. 2002).

23

v. McTaggart, 88 P.3d 1078, 1089 (Alaska 2004) (holding that a clear and convincing evidence standard provides effective protection for a parent's choice).[17]

¶36 "In cases involving individual rights, whether criminal or civil, '[t]he standard of proof [at a minimum] reflects the value society places on individual liberty." Addington, 441 U.S. at 425 (quoted source omitted). As recognized by the Troxel court, a fit parent's interest in the care, custody, and control of his or her child "is perhaps the oldest of the fundamental liberty interests recognized by [the United States Supreme] Court." Troxel, 530 U.S. at 65. We therefore conclude that the Grandparent Visitation Statute is narrowly tailored to further a compelling state interest because a grandparent must overcome the presumption in favor of a fit parent's visitation decision with clear and convincing evidence that the decision is not in the child's best interest.

---

[17] Most of these courts construe their statutes to also require proof of a significant bond between a grandparent and grandchild that, if severed, would threaten the welfare of the child. See, e.g., Walker, 382 S.W.3d at 871-72 (Ky. 2012) (reasoning that a grandparent must show that they "shared such a close bond that to sever contact would cause distress to the child," and that there was a harm standard "implicit" in the statutory factors); Zimmer, 781 N.W.2d at 489 (S.D. 2010) (holding that the circuit court can rely on "special factors" such as "physical or emotional harm to the grandchild if visitation is denied or limited"); Camburn, 586 S.E.2d at 579-80 (S.C. 2003) (requiring a grandparent to show by clear and convincing evidence that the parent is unfit or that there are "compelling circumstances, such as significant harm to the child").

### E. We modify and clarify the holdings in Martin L. and Roger D.H.

¶37 We next explain the impact of this constitutional analysis on the holdings in Martin L. and Roger D.H. We modify the holding in Roger D.H. to require a grandparent to overcome the presumption in favor of a fit parent's visitation decision with clear and convincing evidence that the decision is not in the child's best interest. While the court of appeals in Roger D.H. articulated the appropriate presumption in favor of a fit parent's decision, the court of appeals went on to state that "[a]t the same time, we observe that this is only a presumption and the circuit court is still obligated to make its own assessment of the best interest of the child." Roger D.H., 250 Wis. 2d 747, ¶19. We determine that a circuit court should consider the nature and extent of grandparent visitation only if a grandparent overcomes the presumption in favor of a fit parent's visitation decision with clear and convincing evidence that the decision is not in the child's best interest. A circuit court should not substitute its judgment for the judgment of a fit parent even if it disagrees with the parent's decision.

¶38 Likewise, we must clarify Martin L., 299 Wis. 2d 768, a case involving a petition for grandparent visitation following the death of a parent pursuant to Wis. Stat. § 54.56. In Martin L., the court of appeals applied the analysis as stated in Roger D.H., implying that in deciding a petition for grandparent visitation, a circuit court must always apply its own assessment

of what is in the child's best interest. Martin L., 299 Wis. 2d 768, ¶12. The rebuttable presumption, as set forth in Roger D.H. and applied by the court in Martin L., was merely a restatement of the best interest of the child standard and allowed a circuit court to easily intervene to second guess a fit parent's decision. We clarify Martin L., as we did Roger D.H., to require a petitioning grandparent to overcome the presumption in favor of a fit parent's visitation decision with clear and convincing evidence that the decision is not in the child's best interest. We emphasize that a circuit court assesses the nature and extent of visitation only after that burden has been met.

F. The Grandparent Visitation Statute is unconstitutional as applied because Kelsey did not overcome the presumption in favor of Lyons and Michels' visitation decision with clear and convincing evidence that their decision is not in A.A.L.'s best interest.

¶39 Finally, we assess the merits of Lyons and Michels' as-applied challenge by considering the facts of this case, not hypothetical facts from different situations. See State v. Hamdan, 2003 WI 113, ¶43, 264 Wis. 2d 433, 665 N.W.2d 785. There is no dispute that Lyons and Michels are fit parents and the circuit court found them to be "good parents."[18] The issue is whether under these circumstances the circuit court infringed upon Lyons and Michels' fundamental liberty interest in the care

---

[18] If parental fitness were an issue, Wis. Stat. ch. 48 may be implicated.

26

and upbringing of A.A.L. when it granted Kelsey's petition for grandparent visitation.

¶40 At the hearing on Lyons and Michels' motion for reconsideration, the circuit court stated that according to Roger D.H., it had "applied the presumption a fit parent's decision on placement is in the child's best interest, rebuttable in the Court's discretion."[19] In deciding to grant Kelsey's petition over the objection of Lyons and Michels, the circuit court relied upon A.A.L.'s significant contact with Kelsey over the years and the guardian ad litem's recommendation. The circuit court also stated that it did not "think it was fair to [A.A.L.] then or now to just cut off cold turkey her contact with grandma." The circuit court concluded that the "bare bones" schedule it set forth was therefore in A.A.L.'s best interest.[20]

¶41 The Grandparent Visitation Statute is unconstitutional as applied because Kelsey did not overcome the presumption in favor of Lyons and Michels' visitation decision with clear and convincing evidence that their decision is not in A.A.L.'s best

---

[19] The circuit court did not reference the factors laid out in the Grandparent Visitation Statute in its oral ruling on Kelsey's petition. It was not until the hearing on Lyons and Michels' motion for reconsideration that the circuit court articulated its reasons for granting Kelsey's petition and the required presumption.

[20] Although the circuit court referred to the schedule as "bare bones," a minimum of five hours a month and one week every summer with no travel restrictions is not insignificant.

interest. Although the circuit court asserted that it applied a presumption that Lyons and Michels' decision was in A.A.L.'s best interest, the decision of the circuit court exemplifies a circuit court improperly substituting its judgment for that of fit parents. Lyons and Michels did not seek to eliminate Kelsey's visitation entirely and there is no indication that they would deprive A.A.L. of having a relationship with Kelsey. In fact, they testified that they would not eliminate Kelsey's visitation with A.A.L. unless they felt that it was unhealthy for A.A.L. or not in her best interest. At the time Kelsey petitioned for visitation there had been no change in circumstances involving A.A.L.'s family unit, as Lyons and Michels had not lived together since A.A.L. was a small child. Kelsey's desire to merely secure a more generous and predictable visitation schedule is not enough to overcome the presumption in favor of Lyons and Michels' visitation decision and demonstrate that their decision is not in A.A.L.'s best interest, thus barring intervention by the State. See Rogers v. Rogers, 2007 WI App 50, 300 Wis. 2d 532, 731 N.W.2d 347 (holding that state interference in the form of court ordered placement with grandparents was unwarranted where the parents maintained considerable contact between their child and her grandparents, just not as much as the grandparents desired).

## IV. CONCLUSION

¶42 In sum, a fit parent has a fundamental liberty interest in the care and upbringing of his or her child and therefore to be applied constitutionally, the Grandparent

28

Visitation Decision must withstand strict scrutiny. We confirm that the Grandparent Visitation Statute is facially constitutional because there are circumstances under which the law can be constitutionally enforced. We conclude that the Grandparent Visitation Statute is narrowly tailored to further a compelling state interest because it requires a grandparent to overcome the presumption in favor of a fit parent's visitation decision with clear and convincing evidence that the decision is not in the child's best interest. Lastly, we conclude that the Grandparent Visitation Statute is unconstitutional as applied because Kelsey did not overcome the presumption in favor of Lyons and Michels' visitation decision with clear and convincing evidence that their decision is not in A.A.L.'s best interest.

¶43 Based upon the record below, we decline to remand the case to the circuit court. The visitation order violated the constitutional rights of Lyons and Michels and we decline to force the parties into additional litigation that would further burden Lyons and Michels' fundamental liberty interest in the care and upbringing of A.A.L.

*By the Court.*—Order of the circuit court is vacated.

¶44 REBECCA GRASSL BRADLEY, J. *(concurring).* I agree with the majority that Wisconsin Stat. § 767.43(3) infringes upon parents' fundamental liberty interest in the care, custody, and upbringing of their children and therefore must withstand strict scrutiny in order to be constitutional. Majority op., ¶2. I also agree that the circuit court's visitation order in this case violated the constitutional rights of the parents and I join the mandate vacating the circuit court's order. I write separately because when subjected to a strict scrutiny analysis, § 767.43(3) must fall as facially unconstitutional, not merely unconstitutional as applied to the parents in this case as the majority decides. The State "lacks even a legitimate governmental interest——to say nothing of a compelling one——in second-guessing [] fit parent[s'] decision[s] regarding visitation with third parties." Troxel v. Granville, 530 U.S. 57, 80 (2000) (Thomas, J., concurring)· I would strike down § 767.43(3) because it tramples upon "perhaps the oldest of the fundamental liberty interests recognized by th[e] Court." See Troxel, 530 U.S. at 65. Because the majority upholds the constitutionality of § 767.43(3), except as applied to the parents in this particular case, fit parents' fundamental liberty interest in raising their children free from governmental interference remains at risk.[1]

---

[1] Because the majority's opinion applies only to the parents in this case, it will force fit parents to expend significant financial resources (which many parents lack) in order to litigate anew the very issues presented to this court, the adverse emotional impact of which is often suffered most acutely by the child. In this case, the parents' attorney advised the

(continued)

I

¶45 The parents in this case challenge the constitutionality of Wis. Stat. § 767.43(3), which provides:

(3) <u>Special grandparent visitation provision</u>. The court may grant reasonable visitation rights, with respect to a child, to a grandparent of the child if the child's parents have notice of the hearing and the court determines all of the following:

(a) The child is a nonmarital child whose parents have not subsequently married each other.

(b) Except as provided in sub. (4), the paternity of the child has been determined under the laws of this state or another jurisdiction if the grandparent filing the petition is a parent of the child's father.

(c) The child has not been adopted.

(d) The grandparent has maintained a relationship with the child or has attempted to maintain a relationship with the child but has been prevented from doing so by a parent who has legal custody of the child.

(e) The grandparent is not likely to act in a manner that is contrary to decisions that are made by a parent who has legal custody of the child and that

---

circuit court that: "My clients have no money left. They both are completely taxed out." The circuit court acknowledged the parents "spen[t] a lot of money that could be used for [the child] or other reasons than trying to defend themselves in court[.]" Some courts recognize that the very initiation of a lawsuit where fundamental rights are at stake violates the Constitution, improperly intrudes into the family, and causes trauma, "expense, stress, and [the] pain of litigation." <u>See, e.g.,</u> <u>Roth v. Weston</u>, 789 A.2d 431, 442 (Conn. 2002) (quoted source omitted); <u>Brooks v. Parkerson</u>, 454 S.E.2d 769, 773 (Ga. 1995) (noting even when child has bond with grandparent, "the impact of a lawsuit to enforce maintenance of the bond over the parents' objection can only have a deleterious effect on the child." (quoted source omitted)).

2

are related to the child's physical, emotional, educational or spiritual welfare.

(f) The visitation is in the best interest of the child.

A constitutional challenge to a statute presents a question of law reviewed de novo. Nankin v. Vill. of Shorewood, 2001 WI 92, ¶10, 245 Wis. 2d 86, 630 N.W.2d 141. If the statute implicates a fundamental right, this court applies strict scrutiny review and the statute will be upheld only if "narrowly tailored toward furthering [a] compelling state interest." Mayo v. Wis. Injured Patients and Families Comp. Fund, 2018 WI 78, ¶28, 383 Wis. 2d 1, 914 N.W.2d 678.

¶46 Both the United States Supreme Court as well as this court recognize parents' fundamental liberty interest in raising their children. See Troxel, 530 U.S. at 65 ("The liberty interest at issue in this case——the interest of parents in the care, custody, and control of their children——is perhaps the oldest of the fundamental liberty interests recognized by this Court."); Washington v. Glucksberg, 521 U.S. 702, 720 (1997) ("[T]he 'liberty' specially protected by the Due Process Clause includes . . . the right[]. . . to direct the education and upbringing of one's children"); Santosky v. Kramer, 455 U.S. 745, 753 (1982) ("[F]reedom of personal choice in matters of family life is a fundamental liberty interest protected by the Fourteenth Amendment."); Quilloin v. Walcott, 434 U.S. 246, 255 (1978) ("We have recognized on numerous occasions that the relationship between parent and child is constitutionally protected."); Wisconsin v. Yoder, 406 U.S. 205, 231-33 (1972) (The "primary role of the parents in the upbringing of their

3

children is now established beyond debate as an enduring American tradition."); Prince v. Massachusetts, 321 U.S. 158, 166 (1944) ("It is cardinal with us that the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder."); Pierce v. Society of the Sisters, 268 U.S. 510, 534-35 (1925) (recognizing "the liberty of parents and guardians to direct the upbringing and education of children under their control" among those "rights guaranteed by the Constitution" that "may not be abridged by legislation which has no reasonable relation to some purpose within the competency of the State"); Meyer v. Nebraska, 262 U.S. 390, 399 (1923) ("[L]iberty guaranteed . . . by the Fourteenth Amendment . . . include[s] . . . the right of the individual to . . . establish a home and bring up children."); Tammy W-G v. Jacob T., 2011 WI 30, ¶52, 333 Wis. 2d 272, 797 N.W.2d 854 ("Parents who have developed a relationship with their children have a fundamental liberty interest in the 'care, custody, and control of their children.'") (quoting Troxel, 530 U.S. at 57); Monroe Cty. Dep't of Human Servs. v. Kelli B., 2004 WI 48, ¶19, 271 Wis. 2d 51, 678 N.W.2d 831; Barstad v. Frazier, 118 Wis. 2d 549, 567-68, 348 N.W.2d 479 (1984) ("Under ordinary circumstances, a natural parent has a protected right under both state law and the United States Constitution to rear his or her children free from governmental intervention."); Rick v. Opichka, 2010 WI App 23, ¶¶5, 21, 323 Wis. 2d 510, 780 N.W.2d 159; Lubinski v. Lubinski, 2008 WI App 151, ¶¶6, 13, 314

4

Wis. 2d 395, 761 N.W.2d 676; Rogers v. Rogers, 2007 WI App 50, ¶18, 300 Wis. 2d 532, 731 N.W.2d 347.

¶47 Wisconsin Stat. § 767.43(3) implicates this fundamental right of parents by interfering with parents' decisions regarding who may spend time with their children and to what extent. Accordingly, strict scrutiny review applies and the statute's constitutionality depends upon the State's ability to identify a compelling interest furthered by the statute and to demonstrate how the statute is narrowly tailored to meet that compelling state interest. If the statute fails this test, it violates the Constitution.

¶48 What compelling state interest warrants overruling parents' fundamental rights to decide with whom their child spends time? The text of Wis. Stat. § 767.43(3) does not say. It allows the circuit court to supplant parents' judgment with its own if the statutory conditions are satisfied. Our court of appeals implicitly recognized the facial unconstitutionality of this statute in Roger D.H., but "saved" the statute from "facial invalidation" by reading into its text Troxel's requirement that a "fit parent's determination" as to what is best for his child must be presumed correct and given "special weight." Roger D.H. v. Virginia O., 2002 WI App 35, ¶¶13, 18-20, 250 Wis. 2d 747,

5

641 N.W. 2d 440.[2] The statute contains no such presumption nor does it direct the circuit court to give any weight whatsoever to the parents' determination. More importantly, even if the requirements of Troxel are (however inappropriately)[3] read into the statute, no compelling state interest warrants the State's intrusion in the first place. Consequently, even reading Troxel's requirements into § 767.43(3) will not render the statute constitutional.

¶49 The majority neglects to identify any "compelling state interest" justifying judicial meddling in the decision-making of two fit parents regarding visitation. In conclusory fashion, it asserts that Wis. Stat. § 767.43(3) "is narrowly tailored to further a compelling state interest because it requires a grandparent to overcome the presumption in favor of a

---

[2] This court accepted Roger D.H.'s reading of the statute in S.A.M. v. Meister, 2016 WI 22, ¶45, 367 Wis. 2d 447, 876 N.W.2d 746 (referencing Roger D.H. v. Virgina O., 2002 Wi App 35, 250 Wis. 2d 747, 641 N.W.2d 440). Meister analyzed a different subsection of the statute——Wis. Stat. § 767.43(1). The majority maintains that declaring Wis. Stat. § 767.43(3) unconstitutional "would necessarily require us to overturn our 2016 decision in Meister." Majority op., ¶33. There is no need to do so because we analyze a different subsection of the statute in this case.

[3] A fundamental canon of statutory construction instructs that "[n]othing is to be added to what the text states or reasonably implies (casus omissus pro omisso habendus est). That is, a matter not covered is to be treated as not covered." Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 93 (2012). This canon has been described as a "principle . . . so obvious that it seems absurd to recite it" because it "is not [the judge's] function or within his power to enlarge or improve or change the law." Id. (quoted source omitted).

fit parent's visitation decision with clear and convincing evidence that the decision is not in the child's best interest." Majority op., ¶42. This purported requirement appears nowhere in the text of the statute and it is not the judiciary's job to "tailor" a statute in order to render it constitutional. In similar fashion, the majority invokes the State's interest in acting when "a child's physical or mental health or welfare is in jeopardy." Majority op., ¶24. However, § 767.43(3) contains no requirement that a child's health or welfare be in jeopardy before authorizing the circuit court to grant visitation rights. The majority then mentions "triggering events" that may warrant State intervention such as adoption, death of a parent, divorce, legal separation of married couples, and separation of a child from a parent. See majority op., ¶¶26, 28-31. Again, § 767.43(3) incorporates none of these triggering events. The majority proceeds to cite a litany of foreign statutes in which a compelling state interest appears or into which one has been read by the courts, such as harm to the child. Majority op., ¶¶29-31. Nowhere does the majority actually identify the compelling state interest supporting § 767.43(3), understandably so because there is none.[4]

---

[4] The majority's reliance on Rick v. Opichka, 2010 WI App 23, 323 Wis. 2d 510, 780 N.W.2d 159 is misplaced. Opichka dealt with Wis. Stat. § 54.56 (2007-08), which involves grandparent visitation after a parent dies. Opichka, 323 Wis. 2d 510, ¶3. Opichka does not establish a compelling state interest for Wis. Stat. § 767.43(3).

7

¶50 The United States Supreme Court declared nearly two decades ago that "so long as a parent adequately cares for his or her children (i.e., is fit), there will normally be no reason for the State to inject itself into the private realm of the family to further question the ability of that parent to make the best decisions concerning the rearing of that parent's children." Troxel, 530 U.S. at 68-69. Wisconsin Stat. § 767.43(3) does not distinguish between fit and unfit parents; instead, it allows a circuit court to grant a grandparent visitation rights with respect to a nonmarital child[5] so long as such visitation is in the best interest of the child and the other statutory conditions exist. Unlike other Wisconsin laws implicating parental rights, Chapter 767 fails to identify any compelling state interest justifying this particular governmental intrusion into family matters.

¶51 For example, Chapter 48——The Children's Code—— explicitly proclaims its purpose is to protect children from parents whose actions or inaction subject their children or unborn children to an actual or substantial risk of physical or emotional harm and to protect children's "health and safety" by, among other State actions, remedying "any circumstances in the home which might harm the child" or removing a child from the parental home when necessary "to ensure that the needs of a child" are met, including "the need for adequate food, clothing and shelter; the need to be free from physical, sexual or

---

[5] Married couples and their children are spared the State's intrusion provided the parents are fit.

8

emotional injury or exploitation; the need to develop physically, mentally and emotionally to their potential; and the need for a safe and permanent family." Wis. Stat. § 48.01(1)(a) and (ag). Under these and other circumstances detailed in Chapter 48, a circuit court may take jurisdiction over a child alleged to be in need of protection or services. Wis. Stat. § 48.13.

¶52 Protecting children from either an actual or substantial risk of physical or emotional harm stemming from parental inability or unwillingness to provide for children's basic needs presents a compelling interest: in the face of such parental deficits, the children's survival depends on the State stepping in. See In re TPR to Diana P., 2005 WI 32, ¶¶20, 32, 279 Wis. 2d 169, 694 N.W.2d 344 (holding the State has a compelling interest to protect children from unfit parents). Likewise, in Chapter 767, the State intervenes in family matters upon marital dissolution when the parents are unable to resolve disputes over custody and physical placement. Wis. Stat. § 767.41. It is the parents' disagreement (which is absent in this case) that leads to State intervention.[6] In contrast, the special grandparent visitation provision set forth in Wis. Stat. § 767.43(3) serves neither to protect a child from harm, nor

---

[6] In this case, nothing warranted the State meddling with this family. There was no pending family law matter between the parents. There was no placement or custody battle. Both parents are alive and actively present in their daughter's life. The parents, although living separately, amicably share placement of their daughter and both agreed to keep the grandmother involved in their daughter's life.

9

resolve a dispute between feuding parents. The State intercedes not to protect or remove the child from harm, nor at the invitation of parents unable to resolve their differences, but whenever the circuit court deems the "best interest of the child" warrants the nanny state overriding the joint decision of two fit parents.

¶53 Other jurisdictions reviewing third-party visitation statutes have determined that the only compelling state interest justifying interference with parents' fundamental rights is harm to the child or unfit parents. See Moriarty v. Bradt, 827 A.2d 203, 222 (N.J. 2003) ("[w]hen no harm threatens a child's welfare, the State lacks a sufficiently compelling justification for the infringement on the fundamental right of parents to raise their children as they see fit."); see also Jones v. Jones, 2013 UT App 174, ¶¶25-27, 307 P.3d 598 (citing Roth v. Weston, 789 A.2d 431, 445 (Conn. 2002); Beagle v. Beagle, 678 So. 2d 1271, 1276 (Fla. 1996); Brooks v. Parkerson, 454 S.E.2d 769, 772-74 (Ga. 1995); Doe v. Doe, 172 P.3d 1067, 1079-80 (Haw. 2007); Howard v. Howard, 661 N.W.2d 183, 190 (Iowa 2003); Koshko v. Haining, 921 A.2d 171, 191 (Md. 2007); Herbst v. Sayre, 971 P.2d 395, 398 (Okla. 1998); Hawk v. Hawk, 855 S.W.2d 573, 577 (Tenn. 1993); Appel v. Appel, 109 P.3d 405, 410 (Wash. 2005)). See also E.H.G. v. E.R.G., 73 So. 3d 634, 649-50 (Ala. 2011); Blixt v. Blixt, 774 N.E.2d 1052, 1059 (Mass. 2002); Camburn v. Smith, 586 S.E.2d 565, 580 (S.C. 2003); Glidden v. Conley, 2003 VT 12, ¶21, 820 A.2d 197.

¶54 I agree with these other jurisdictions in concluding that the only compelling interest warranting the State's intrusion upon two parents' fundamental right to raise their child as they mutually see fit is harm to the child. Wisconsin already has expansive statutory provisions set forth in Chapter 48 governing the State's intervention in family matters to protect children from harm that has been or may be inflicted upon them as a result of their parents' incapacities or unfitness. Regardless, nothing in the text of Wis. Stat. § 767.43(3) suggests its purpose is to protect children from harm. When two fit parents agree on the manner in which they raise their child, the child must be in danger in order for the State to inject itself into the private realm of a family. A statute permitting such governmental intrusion based solely on the best interests of a child without being tethered to any compelling interest is constitutionally infirm.[7]

¶55 The majority endeavors to "save" the grandparent visitation statute from facial invalidation by concluding that

---

[7] The majority misrepresents my recognition of "a compelling state interest for state intervention where parental unwillingness results in a substantial risk of emotional harm to the child" in other Wisconsin statutes as an acknowledgment that "there are circumstances under which the Grandparent Visitation Statute can be constitutionally enforced." Majority op., ¶¶32-33 (emphasis added). The textual identification of harm to a child as a compelling state interest cannot be imported from other Wisconsin statutes into Wis. Stat. § 767.43(3) in order to save it from facial unconstitutionality. To the contrary, it is because § 767.43(3) fails to express any compelling state interest in interfering with fit parents' fundamental right to raise their children that it violates the Constitution.

11

Wis. Stat. § 767.43(3) "is narrowly tailored to further a compelling state interest" but only if a grandparent overcomes "the presumption in favor of a fit parent's visitation decision with clear and convincing evidence that the decision is not in the child's best interest."[8] Under the majority's logic, § 767.43(3) lacks a compelling state interest——except when it doesn't. The majority attempts to reconcile this inconsistency by deciding that "[t]he Grandparent Visitation Statute is unconstitutional as applied because Kelsey did not overcome the presumption in favor of Lyons and Michels' visitation decision with clear and convincing evidence that their decision is not in A.A.L.'s best interest."[9] The majority does not explain how the constitutionality of a statute could possibly be dependent upon the strength of a party's presentation of evidence. Merely maintaining that under certain circumstances the State may have a compelling interest in interfering with the fundamental right at stake in this case, when the State expresses no compelling interest within the text of the statute itself, cannot "save" a statute subject to strict scrutiny, under any circumstances.

¶56 The majority goes on to caution a circuit court against "improperly substituting its judgment for that of fit parents,"[10] but then allows a petitioning "grandparent to overcome the presumption in favor of a fit parent's visitation

---

[8] Majority op., ¶2.

[9] Majority op., ¶41.

[10] Majority op., ¶41.

decision with clear and convincing evidence that the decision is not in the child's best interest,"[11] apparently preserving the ability of courts to substitute their judgment for the judgment of fit parents so long as the petitioning grandparents surmount the heightened evidentiary hurdle imposed by the majority here.

¶57 Even if a compelling state interest could be identified, Wisconsin's grandparent visitation statute is not narrowly tailored. The text of Wis. Stat. § 767.43(3) rather broadly affords circuit courts the discretion to override the wishes of nonmarital parents if the circuit court determines a different visitation schedule is in the best interests of the child. In comparison, other jurisdictions narrowly tailor their statutes to apply only when a grandparent has functionally served as the child's parent for a lengthy period of time so that severing that relationship would cause significant harm to the child's health or well-being. See, e.g., Conn. Gen. Stat. Ann. § 46b-59. Some require that a grandparent demonstrate complete denial of access to the grandchild. See, e.g., Neuhoff v. Ubelhor, 14 N.E.3d 753, 762 (Ind. Ct. App. 2014) (statute requiring consideration of whether visitation has been denied entirely or simply limited; holding "no need for court intervention" when dispute involves grandmother wanting visitation on her terms). Other statutes set aside the wishes of the parents only when a grandparent can establish a custodial parent's unfitness or other extraordinary circumstances

---

[11] Majority op., ¶42.

13

affecting the welfare of the child, such as abandonment, neglect or abdication of parental responsibilities.[12]   See, e.g., Jones, 307 P.3d 598, ¶8; Roth, 789 A.2d at 444-45.

¶58 The majority's opinion in this case changes very little for families similarly situated.   In future cases, circuit courts in Wisconsin must follow Troxel and presume that the decisions of fit parents as to what is best for their child is correct, and must give the parents' determinations "special weight" (whatever that means).   Then the circuit court must merely find that a petitioning grandparent has overcome the Troxel presumption by clear and convincing evidence, which affords the circuit court the discretion to overrule the decisions of fit parents and instead impose on the family the circuit court's view of the best interests of the child.   Surely the fundamental liberty interest of parents in being free from State interference in the care, custody, and upbringing of their families——"perhaps the oldest of the fundamental liberty interests recognized by" the United States Supreme Court—— deserves much more protection than this.

¶59 Of course, grandparents can play significant and beneficial roles in the lives of their grandchildren.[13]   But "as

---

[12] I cite various factors used in foreign statutes not to affirm their constitutionality, but to illustrate how Wisconsin's grandparent visitation statute lacks any tailoring whatsoever.   Even a narrowly-tailored statute may nevertheless be unconstitutional.   See, e.g., Jones v. Jones, 2013 UT App 174, 307 P.3d 598.

14

the constitutional body vested with the power to say 'what the law is,' the judiciary evaluates a statute for its fidelity to the constitution, and 'an act of the legislature, repugnant to the constitution, is void.' Marbury[ v. Madison], 5 U.S. (1 Cranch) [137,] 177 [(1802)]. When a law contravenes the constitution, it is our duty to say so." Mayo, 383 Wis. 2d 1, ¶84 (Rebecca Grassl Bradley, J., concurring). The limited reach of the majority's opinion, which declares Wis. Stat. § 767.43(3) unconstitutional only as applied to the parents in this case, exposes nonmarital parents to infringement of their fundamental liberty interests in raising their children as they mutually see fit. "[T]he consequences of upholding unconstitutional laws are not confined to a single party in a single case. Rather, failure to strike down an unconstitutional law harms all of the people of this state in potential perpetuity." Mayo, 383 Wis. 2d 1, ¶85 (Rebecca Grassl Bradley, J., concurring).

II

¶60 Federal and State courts consistently ground the fundamental right of parents to raise their children, without governmental interference, in the "substantive" due process

---

[13] Importantly, and as recognized by the majority, the record in this matter shows Michels and Lyons did not cut the grandmother out of their child's life. The grandmother simply would not accept the child's changing schedule, which reduced or eliminated some of the previous grandmother-grandchild activities. A grandparent's desire for a "better" visitation schedule is insufficient to warrant state intervention. Rogers v. Rogers, 2007 WI App 50, ¶21, 300 Wis. 2d 532, 731 N.W.2d 347.

15

protection of the Fourteenth Amendment. See Troxel, 530 U.S. at 65, 75. Although application of "substantive" due process in this context has been questioned under an originalist interpretation of the Constitution, in this case, as in Troxel, "neither party has argued that our substantive due process cases were wrongly decided and that the original understanding of the Due Process Clause precludes judicial enforcement of unenumerated rights under that constitutional provision." Id., 530 U.S. at 80 (Thomas, J., concurring).[14] Because this case, like Troxel, "does not involve a challenge based upon the Privileges [or] Immunities Clause and thus does not present an opportunity to reevaluate the meaning of that Clause," I will not undertake such an analysis. See id. (Thomas, J., concurring).[15]

---

[14] In its amicus brief, the Cato Institute suggests "[t]he Privileges or Immunities Clause contains what should be the Fourteenth Amendment's primary mechanism for limiting state infringement of substantive rights."

[15] Justice Clarence Thomas repeatedly applies an originalist interpretation of the Privileges or Immunities Clause, identifying it, rather than the Due Process Clause, as the proper source for protecting fundamental constitutional rights, and noting that the United States Supreme Court "'marginaliz[ed]' the Privileges or Immunities Clause in the late 19th century by defining the collection of rights covered by the Clause 'quite narrowly.'" Timbs v. Indiana, 586 U.S. ____, 139 S. Ct. 682, 691 (2019) (Thomas, J., concurring), quoting McDonald v. City of Chicago, 561 U.S. 742, 808-09 (2010) (Thomas, J., concurring). "When the Fourteenth Amendment was ratified, the terms privileges and immunities had an established meaning as synonyms for rights." Timbs, 586 U.S. at ____, 139 S. Ct. at 692 (Thomas, J. concurring) (internal quotation marks omitted). Historically, people "understood the Privileges or Immunities Clause to guarantee those 'fundamental principles' 'fixed' by the Constitution." Id.

16

¶61 The parents in this case do invoke Article I, Section 1 of the Wisconsin Constitution, suggesting the circuit court's visitation order may violate the fundamental right of parents to raise their children under that provision, which provides:

> All people are born equally free and independent, and have certain inherent rights; among these are life, liberty and the pursuit of happiness; to secure these rights, governments are instituted, deriving their just powers from the consent of the governed.

The parents do not, however, construe or analyze this section of Wisconsin's Constitution, nor do they offer any argument challenging Wis. Stat. § 767.43(3) under the Wisconsin Constitution in any respect. As a result, this case does not present the opportunity to undertake this analysis.[16]

_____

[16] Justice Antonin Scalia opined that "[i]n my view, a right of parents to direct the upbringing of their children is among the 'unalienable Rights' with which the Declaration of Independence proclaims 'all men . . . are endowed by their Creator.' . . . The Declaration of Independence, however, is not a legal prescription conferring powers upon the courts[.]" Troxel, 530 U.S. at 91 (Scalia, J., dissenting). In contrast, "[t]he Wisconsin Constitution begins with a Declaration of Rights, echoing language from our nation's Declaration of Independence" and expressly incorporates the people's "inherent right" to "liberty" "recognizing that the proper role of government——the very reason governments are instituted——is to secure our inherent rights, including liberty." Porter v. State, 2018 WI 79, ¶52, 382 Wis. 2d 697, 913 N.W.2d 842 (Rebecca Grassl Bradley and Kelly, J.J., dissenting) (citing Wis. Const. art. I, § 1). Not only do courts have the power to enforce rights recognized in Wisconsin's Constitution, they are duty bound to do so. "While the people empower the legislature to enact laws and make policy, the constitution compels the judiciary to protect the liberty of the individual from intrusion by the majority. '[C]ourts of justice are to be considered as bulwarks of a limited Constitution against legislative encroachments[.]' The Federalist No. 78, at 469 (Alexander Hamilton) (Clinton Rossiter ed., 1961)." Porter, 382 Wis. 2d 697, ¶53.

17

III

¶62 I concur with the majority's conclusion that the circuit court's visitation order unconstitutionally violated Michels' and Lyons' fundamental right to parent their daughter. I part with the majority because I would declare Wis. Stat. § 767.43(3) facially unconstitutional. The statute lacks any compelling state interest and is not narrowly tailored to overcome fit parents' fundamental right to raise their children free from governmental intrusion. I respectfully concur.

¶63 I am authorized to state that Justice DANIEL KELLY joins this concurrence.